Frank FONSECA and Blanche
Finney, Appellants,

v.

GOVERNMENT OF THE VIRGIN
ISLANDS, Appellee.

Nos. Crim. A.1996–247, 1996–249.

District Court, Virgin Islands,
Appellate Division,
D. St. Thomas and St. John.

Considered Nov. 4, 1998.

Filed Oct. 6, 2000.

Henry C. Smock, Ariel Smith, Law Offices of Henry C. Smock, St. Thomas, VI, for Appellant Fonseca.

Treston E. Moore, Moore & Dodson, St. Thomas, VI, for Appellant Finney.

Maureen Phelan Cormier, Assistant Attorney General, Virgin Islands Department of Justice, St. Thomas, VI, for Appellee.

Before: RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, District Judge, District Court of the Virgin Islands; and PATRICIA D. STEELE, Judge, Territorial Court, Division of St. Croix, Sitting by Designation.

## MEMORANDUM OPINION

PER CURIAM.

## I. INTRODUCTION

In June of 1996, following a jury trial, Blanche Finney ["Finney" or, together with Mr. Fonseca, "appellants"] and Frank Fonseca ["Fonseca" or, together with Ms. Finney, "appellants"] were each convicted of second degree murder in violation of V.I. CODE ANN. tit. 14, § 922(b). The court sentenced Finney to fifteen years incarceration and Fonseca to sixteen years. Finney and Fonseca request that this Court vacate their convictions, citing numerous defects in the conduct of the trial that warrant such an action by the Appellate Division. For the reasons set forth below, the Court will reverse the judgment of the Territorial Court, vacate the appellants' convictions, and remand this matter for a new trial.

## II. FACTUAL BACKGROUND

Blanche Finney was at one time married to Khaalid Tariq ["victim" or "Tariq"]. After having two children, the couple separated. Finney asserts the couple separated because of Tariq's abusive behavior towards her. At one time, Finney obtained a temporary restraining order ["TRO"] against Tariq to keep him away from her. This TRO was later dismissed because of Finney's failure to appear at a hearing and after Tariq had moved to St. Croix. Tariq supposedly continued to harass and intimidate Finney during his subsequent visits to St. Thomas.

At some point, Finney began a relationship with Frank Fonseca and remained in that relationship in January of 1994. At that time, Finney was residing with her brother, Jesse Finney ["Jesse"], at what was then known as the Ramada Yacht Haven Hotel, and Fonseca regularly visited the apartment. Both Finney and her brother were employed as security guards with Finney being assigned to patrol the Ramada Yacht Haven Hotel.

On the evening of January 23, 1994, Tariq appeared on the grounds of the hotel. Finney engaged Tariq in conversation, presumably to see what he wanted, while Fonseca watched from a distance, holding a can of mace. The initial conversation ended without incident, although Tariq did not leave. Tariq confronted Finney again a short time later, this time allegedly raising his voice to her. After the second interaction, Finney and Fonseca returned to their apartment for the evening believing that Tariq had left the area.

Early in the morning on January 24, 1994, when Finney, Fonseca, and Jesse Finney were asleep in the apartment, Tariq knocked loudly on the door. Jesse answered the door, not recognizing who was at the door asking to speak with Finney. By this time, Tariq had consumed the equivalent of six alcoholic drinks and had marijuana in his system. Hearing the commotion, Fonseca came to the door with the can of mace and asked Tariq to leave. He refused. Meanwhile, Jesse picked up a baton club, went out through a rear sliding window, and jumped down to the ground. He came around the front of the building, climbed the three floors of steps, and approached Tariq from behind in the hallway outside of Finney's apartment. Jesse restrained Tariq from behind using the baton. Fonseca and Tariq were in a heated argument and Jesse had restrained Tariq with the baton by the time Finney came to the door. The parties' assertions of the facts diverge at this point.

The appellants contend that Tariq then grabbed Finney by the neck, which provoked Jesse to use the baton to restrain Tariq. Tariq attempted to free himself

from Jesse and swung around to force Jesse against the wall. Fonseca sprayed mace at Tariq but missed, hitting Jesse in the face and causing Jesse to drop the baton. Tariq grabbed the baton and hit Jesse in the head. Jesse, incapacitated by the mace, retreated to the apartment to wash the mace out of his eyes. Tariq then used the baton to hit Fonseca and Finney attempted to intervene by again spraying the mace. The can, however, was empty. Tariq began using the baton against both Fonseca and Finney. Fonseca yelled to Finney to run, but Tariq had her pinned to the ground and was attacking her with the baton. Fonseca went into the apartment, grabbed two knives from the kitchen, and returned to the hallway. He began thrusting the knives in Tariq's direction, attempting to get Tariq away from Finney. Tariq swung the baton at Fonseca and lunged at him. Fonseca stabbed Tariq approximately four times. Fonseca and Finney then ran into the apartment, locked the door, and began yelling out the back window for security to call the police.

The government paints a markedly different scenario. Tariq was on the ground and Fonseca was beating him with his fists. Finney attempted to spray Tariq with mace and accidentally sprayed Jesse, who had been beating Tariq on the legs with the baton. Jesse retreated to the apartment. Tariq picked up the baton and began swinging it in self-defense. Fonseca then went into the apartment, retrieved a knife, and returned to the hallway. Finney and Tariq were still fighting but the baton was on the floor. Fonseca began to stab Tariq. While Fonseca was stabbing Tariq, Finney retrieved a knife from the apartment. She returned to the hallway and also stabbed Tariq. Fonseca and Finney retreated to their apartment but Tariq was still alive. He used the baton to

pound on several apartment doors but no one responded.

Tariq died from stab wounds. Fonseca, Finney, and Jesse were arrested and charged with first degree murder. Jesse eventually pled guilty to third degree assault. After a jury trial conducted in June, 1996, Fonseca and Finney were convicted of second degree murder.

## III. DISCUSSION

The appellants contend that their convictions must be vacated because of numerous errors committed during discovery and during trial.[1] For example, appellant Finney maintains that the government abused its power by improperly issuing an Attorney General subpoena after she was charged with the crimes giving rise to this appeal. The government did in fact issue, after Finney was already charged, an Attorney General subpoena to the Roy L. Schneider Memorial Hospital, where Finney had previously sought medical and psychological treatment. The government issued this subpoena pursuant to 4 V.I.C. § 601:

> The Attorney General ... shall have the authority to issue subpoenas, subscribed by them for witnesses, and/or for chattels, books, papers or documents, within the Virgin Islands in the conduct of the investigation of any crime ... within [the Attorney General's] jurisdiction.

The statute does not define "investigation." This subpoena power is traditionally used to investigate a crime before a defendant is charged, rather than to prepare for trial. Federal Rules of Criminal Procedure 16 and 17 delineate appropriate areas of discovery and means of using subpoenas in

---

1. Appellants cite, for example, the government's failure to provide the appellants with information before trial concerning the government's eyewitness; the trial court's ruling excluding evidence of the victim's propensity for violence was in error; the court's ruling denying the appellants' motion for judgment of acquittal at the close of the government's case-in-chief; the government's alleged acts which amounted to jury tampering; and the government's use of impermissible inflammatory statements during closing argument.

criminal prosecutions.[2] The difference between proceeding under 4 V.I.C. § 601 and the federal rules is significant. Section 601 does not require the government to notify opposing counsel or the court; the federal rules require prior notification and, in certain circumstances, require the court's approval. The distinction between the local statute and federal laws is clearly related to the stage of the proceedings and whether the right to counsel has attached.

■ After examining section 601 and the federal rules concerning discovery, the Court finds that the Attorney General's power to issue a subpoena pursuant to 4 V.I.C. § 601 may be exercised only *before* a person is charged with a crime. After charges are filed, the government must proceed through the channels and procedures outlined in the Federal Rules of Criminal Procedure if it desires to obtain what is more properly deemed discovery and not investigation. For example, once a defendant has been charged, the Attorney General has no more right to talk to witnesses than defense counsel, and cannot subpoena witnesses, under threat of arrest, to his office for trial preparation. (*See* App. at 40.)

Although the Court finds that the government did abuse its power in issuing the subpoena after Finney's arrest, we do not reach the issue of whether Finney suffered any prejudice as a result, since we reverse on other grounds. The trial court precluded the government from using the medical records obtained as a result of the subpoena in its case-in-chief, although it did allow the prosecutor to use them to impeach Finney if she chose to testify. Since Finney exercised her right not to take the stand in her own defense, the government had no occasion to use the information it had improperly obtained against her. *But see* 3 V.I.C. § 281(g)(making medical records confidential unless otherwise ordered by a court). Although there is also a

substantial question whether the doctor-patient privilege applies to felony prosecutions in Territorial Court, we similarly do not reach Finney's claim that the government improperly obtained statements from her physician at St. Thomas' Roy Lester Schneider Hospital. *See* 5 V.I.C. § 855(2).

The issue raised by both Finney and Fonseca that requires a new trial is the inadequate instructions given to the jury by the trial court on the defenses of self-defense and justifiable homicide. Appellants argue that they were entitled to additional instructions on lawful violence, the right to use reasonable force to remove a trespasser, the powers of arrest by a private person, the right to resist, and the defense of habitation. The court arguably included the instruction on defense of habitation within its instruction on justifiable homicide. (*See* App. at 1254.) Of the remaining allegations raised by the appellants, the court's failure to include the instruction on lawful violence causes the greatest concern.

■ "A defendant 'is entitled to [a jury] instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.'" *Government of the Virgin Islands v. Robinson*, 29 F.3d 878, 882 (3d Cir.1994)(quoting *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988)). Pursuant to 14 V.I.C. § 293(a), a person is authorized to use force against another for:

. . .

(3) the preservation of peace, or to prevent the commission of offenses;

(4) in preventing or interrupting an intrusion upon the lawful possession of property, against the will of the owner or person in charge thereof;

. . .

---

**2.** By definition, the Federal Rules of Criminal Procedure encompass topics that are procedural and administrative in nature and not

substantive. Accordingly, these rules apply to proceedings in Territorial Court. *See* TERR. CT. R. 7.

(6) in self defense or in defense of another against unlawful violence offered to his person or property.

On the evidence before it, the jury could have believed Fonseca and Finney's version of events and accepted their defense of self-defense. Accordingly, the trial court should have given the requested instruction on lawful violence and guided the jury in its evaluation of the evidence in deciding whether to accept or reject the appellants' defense. *See Government of the Virgin Islands v. Salem*, 456 F.2d 674, 675–76 (3d Cir.1972).

Before reaching the issue, we must first determine whether the appellants objected to the trial court's failure to give the lawful violence instruction. Ordinarily, this question is simple to resolve. In this instance, however, the Court finds an extraordinary situation: after giving his closing argument, Attorney Treston Moore, Finney's co-counsel, was required to appear before another judge of the Territorial Court on another matter during the remaining closing arguments and the court's charge to the jury.[3] Attorney Moore was absent from the courtroom and did not hear counsel for Fonseca's closing argument, the government's rebuttal, or the jury instructions given by the court. (App. at 1215, 1232.) Upon his return, Attorney Moore attempted to address his objections to the jury instructions that he was prevented from hearing. He specifically asked the trial judge whether the court had instructed the jury on lawful violence and was assured that it had indeed been so instructed. (*Id.* at 1284.) The record does not support the trial court's assurances to Attorney Moore. Accordingly, we find that Finney did make a timely objection to the trial court's failure to instruct the jury on lawful violence and our review is therefore plenary.

■ Counsel for co-defendant Fonseca, however, did not object to the judge's failure to include the lawful violence instruction. Accordingly, the Court can only grant Fonseca a new trial if it finds that the trial court's omission of the lawful violence instruction amounts to plain error. *Accord Government of the Virgin Islands v. Smith*, 949 F.2d 677, 681 (3d Cir.1991). Under this analysis, a new trial should be granted only if the plain error is such that it " '[undermines the fundamental fairness of the trial and contributes] to a miscarriage of justice' " and substantial rights of the appellant have been affected. *Id.* (quoting *United States v. Young*, 470 U.S. 1, 16, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)); *see Sanchez v. Government of Virgin Islands*, 34 V.I. 105, 109, 921 F.Supp. 297, 300 (D.V.I.App.Div.1996) (defining plain error as those errors that "seriously affect the fairness, integrity, or public reputation of judicial proceedings" and finding that "[t]he doctrine is to be used sparingly and only where the error was sure to have had an unfair 'prejudicial impact' "); *see also United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (plain error under Rule 52(b) of the Federal Rules of Criminal Procedure exists where a legal rule has been violated without a valid waiver by the defendant, the error was clear or obvious, and must have affected substantial rights of the defendant).

■ The lawful violence instruction in this instance was crucial to both appellants' defenses. *See Salem*, 456 F.2d at 676. With the appellants having raised the argument that their actions were committed in self-defense, the government had the burden of disproving beyond a reasonable doubt their claims of self-defense. By not including the lawful violence instruction, the trial court did not put the government to its burden before the jury

---

**3.** Selecting defense counsel from the local bar to represent Finney, the trial court initially appointed Attorney Edith Bornn, an eminently qualified and well respected lawyer, but one who had never before defended a crimi- nal case, let alone a first degree murder prosecution. The trial court appointed Attorney Treston Moore as co-counsel for Finney, apparently in recognition of Attorney Bornn's lack of criminal trial experience.

and as a result, the appellants' due process rights were violated. Without question, the error had an "unfair 'prejudicial impact'" that "seriously affected the ... integrity" of the trial. The Court finds that the trial court's failure to give the lawful violence instruction was plain error, which inclusively indicates that the trial court's omission does not survive plenary review. Accordingly, the Court will vacate the convictions of both appellants and remand for new trial.

## V. CONCLUSION

A trial is not a battle to be won at all costs. The government and the defense must conform to rules of procedure that protect the defendant's constitutional rights and preserve the integrity of the judicial process. Accordingly, we find that the government may issue a witness subpoena pursuant to 4 V.I.C. § 601 only before the defendant is charged. Once the defendant is charged with a crime, the government must conform to the requirements of the Federal Rules of Criminal Procedure governing discovery. We do not reach the issue of whether Finney suffered any prejudice as a result of the government's improper use of its subpoena powers in this instance. We also do not decide whether the government improperly obtained statements from Finney's physician, as we reverse on other grounds.

The trial court's failure, however, to include an instruction on lawful violence does amount to plain error. As a result of the omission of this instruction, the appellants were denied their rights to due process. Accordingly, the Court will vacate the convictions of the appellants and remand the matter for a new trial.