

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-12-2001

# Govt of VI v. Fonseca

Precedential or Non-Precedential:

Docket 00-3628

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Govt of VI v. Fonseca" (2001). *2001 Decisions.* Paper 290.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/290

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 12, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NOS. 00-3628/3877/3878

GOVERNMENT OF THE VIRGIN ISLANDS

v.

FRANK FONSECA
(D.C. Criminal No. 96-00247)

GOVERNMENT OF THE VIRGIN ISLANDS

v.

BLANCHE FINNEY
(D.C. Criminal No. 96-00249)

GOVERNMENT OF THE VIRGIN ISLANDS
Appellant No. 00-3628

GOVERNMENT OF THE VIRGIN ISLANDS

v.

FRANK FONSECA
(D.C. Criminal No. 96-00247)

GOVERNMENT OF THE VIRGIN ISLANDS

v.

BLANCHE FINNEY
(D.C. Criminal No. 96-00249)

BLANCHE FINNEY
Appellant No. 00-3877

GOVERNMENT OF THE VIRGIN ISLANDS

v.

FRANK FONSECA
(D.C. Criminal No. 96-00247)

GOVERNMENT OF THE VIRGIN ISLANDS

v.

BLANCHE FINNEY
(D.C. Criminal No. 96-00249)

FRANK FONSECA
Appellant No. 00-3878

Appellate Division of the District Court for the
Virgin Islands
(D.C. Criminal. APP. Nos. 96-00247 and 96-00249)
District Judges, App. Div.: Hons. Finch, Moore, and Steele

Argued May 18, 2001

BEFORE: MCKEE, RENDELL, and BARRY, Circuit Jud ges

(Opinion Filed December 12, 2001)

  Maureen P. Cormier (Argued)
  Assistant Attorney General
  Department of Justice
  48B-50C Kronprindsens Gade
  GERS Bldg., 2nd Floor
  St. Thomas, USVI 00802
  Attorney for Appellant/Cross-
  Appellee the Government of the
  Virgin Islands

          Treston E. Moore (Argued)
          P.O. Box 310, E.G.S.
          14A Norre Gade
          Charlotte Amalie
          St. Thomas, USVI 00804-0310
          Attorney for Appellee/Cross-
          Appellant Blanche Finney

          Ariel M. Smith (Argued)
          P.O. Box 1498
          Palm Passage, Suite B-22
          Charlotte Amalie
          St. Thomas, USVI 00804-1498
          Attorney for Appellee/Cross-
          Appellant Frank Fonseca

OPINION OF THE COURT

MCKEE, Circuit Judge:

The Government of the Virgin Islands asks us to reverse
a decision of the Appellate Division of the District Court of
the Virgin Islands vacating the murder convictions of
Blanche Finney and Frank Fonseca and remanding for a
new trial. We are also asked to review that court's
conclusion that the Attorney General of the Virgin Islands
is not empowered to issue subpoenas in a criminal
investigation after a defendant has been arrested and
charged with a criminal offense.

In their cross-appeal, the defendants argue that the trial
court erred in failing to instruct the jury on the legal use of
force to: evict a trespasser, preserve the peace, and perform
a citizen's arrest. For the reasons that follow, we hold that
the Appellate Division erred in granting a new trial based
upon the trial court's purported failure to give a lawful
violence instruction. Accordingly, we need not reach any
additional issues or discuss the Appellate Division's dicta
regarding the Attorney General's subpoena power.

I. FACTS

On the evening of January 23, 1994, Blanche Finney and
Frank Fonseca fatally stabbed Khaalid Tariq. Tariq and

3

Blanche were at one time married, but divorced at the time of the stabbing. A detailed account of the circumstances surrounding that killing is set forth in the opinion of the Appellate Division of the Virgin Islands that is the subject of this appeal. See Fonseca v. Government of the Virgin Islands, 119 F. Supp. 2d 531, 532-3 (D.V.I. 2000). For our purposes, it is sufficient to note that at the time of the stabbing, Blanche Finney was romantically involved with Frank Fonseca. Blanche lived with her brother, Jesse Finney. Jesse and Blanche were both security guards at the hotel where they resided. Sometime during the evening of January 23rd, Tariq knocked on Blanche's door and demanded to speak with her. An altercation ensued between Tariq, Jesse, Blanche and Frank Fonseca during which Tariq was repeatedly stabbed. The stabbing occurred after some or all of the trio first hit Tariq with a police baton or "billy club," and tried to spray him with chemical mace.

Thereafter, Blanche and Jesse Finney were arrested along with Frank Fonseca, and charged with first degree murder. Six months after the stabbing, Blanche was admitted to a local hospital for treatment of serious physical injuries unrelated to the stabbing of Tariq. During the course of her hospitalization, she made incriminating statements to her doctor. Those statements were transcribed in her medical record, and her doctor later related them to the prosecutor who issued an Attorney General's subpoena for the medical records. See, 4 V.I.C. S 601.

Jesse Finney eventually pled guilty to third degree assault, but Blanche Finney and Frank Fonseca were jointly tried before a jury. The trial court initially appointed Edith Bornn to represent Blanche at trial. Although Ms. Bornn was "an eminently qualified and well respected lawyer," Fonseca, 119 F.Supp. 2d at 535, she had not previously handled a criminal case, let alone a homicide. Therefore, the court appointed Treston Moore to serve as co-counsel.

During the course of the ensuing trial, the government sought to introduce the subpoenaed medical records arguing that they contained various admissions that were inconsistent with the defendants' claim of self-defense, but

the trial court sustained a defense objection to this evidence.[1] Although the court precluded the government from using this evidence in its case-in-chief, the court allowed the government to use it in rebuttal if Blanche testified. However, Blanche did not testify, and the records were never admitted into evidence.

At the conclusion of the trial, defense counsel asked the court to instruct the jury on the law of self-defense, the right to resist, and the defense of habitation. Moore also requested instructions on defense of others (14 V.I.C. SS 42 and 43), justification with regard to self-defense (14 V.I.C. S 927(2)), lawful violence (14 V.I.C. S 293(a)), and a private citizen's right to arrest and remove a trespasser. App. IV, pp. 1067-74. The court agreed to charge on self-defense and defense of another, but expressed some concerns about the remaining requests. The court was concerned because, although "lawful violence" negates criminal liability for assault and battery, the defendants were charged with murder. App. IV, p. 1106. After weighing the defense request, the trial court stated that it would only give the self-defense and justifiable homicide instructions, and instructed the jury on those two defenses after closing arguments.

Attorney Moore had to appear in another courtroom on the morning that the charge was to be given. He was therefore absent for part of the closing arguments, and all of the judge's jury instructions. When he returned to the courtroom, he asked the court if it had instructed on lawful violence and the court assured him that it had given that instruction. In reality, however, the court had given instructions on self-defense, and justifiable homicide, but had not charged on lawful violence under 4 V.I.C.S 293(a) as Moore had requested during the charge conference. Co-counsel Bornn had been present for the entire charge, but she did not object to the charge the court gave.

─────────────────────────────────────────────

1. Defense counsel argued that under 4 V.I.C.S 601, the Attorney General can only issue subpoenas before a person is arrested. Blanche's medical records were subpoenaed after she had been arrested. Defense counsel also argued that the medical evidence was privileged.

5

The jury convicted both defendants of murder, and they appealed to the Appellate Division of the district court. The Appellate Division ruled that failure to give a lawful violence charge under S 293(a) was reversible error. That court also agreed with the defendants' claim that Virgin Islands law did not empower the Attorney General to subpoena Blanche's medical records after her arrest. This appeal by the Government of the Virgin Islands followed.

The government argues that the Appellate Division erred in stating that Virgin Islands law does not allow the Attorney General to subpoena evidence after an arrest, and in holding that the jury charge was erroneous. In their cross appeal, the defendants challenge "the [Appellate Division's] failure to charge the jury on the several theories of defense," requested at the conclusion of the trial. Appellants' Br. at 25. The defendants also ask us to affirm the Appellate Division's limitation of the Attorney General's subpoena power.

II. DISCUSSION

A. Jurisdiction

Before reaching the substance of these appeals, we must address the defendants' argument that we lack jurisdiction. Defendants argue that the government is not appealing a "final order" as is required under 28 U.S.C.S 1291. They note that 48 U.S.C. S 1493 -- authorizing appeals from prosecutions in a territory -- does not authorize the government to appeal a grant of a new trial in a criminal case.

48 U.S.C. S 1493 provides:

> The prosecution in a territory or Commonwealth is authorized--unless precluded by local law--to seek review or other suitable relief in the appropriate local or Federal appellate court, or where applicable, in the Supreme Court of the United States from--
>
> (a) a decision, judgment, or order of a trial court dismissing an indictment or information as to any one or more counts. . .

6

(b) a decision or order of a trial court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding. . .

(c) an adverse decision, judgment, or order of an appellate court.

48 U.S.C. S 1493 (1999). The defendants also argue that the jurisdictional grant contained in 4 V.I.C. S 39(c) does not apply. That statute states, "the Government of the Virgin Islands may appeal an order dismissing an information or otherwise terminating a prosecution in favor of a defendant or defendants as to one or more counts thereof, except where there is an acquittal on the merits." Finally, defendants argue that although 48 U.S.C. S 1613a(c) (1993) grants us jurisdiction to review "final decisions" of the District Court for the Virgin Islands, the other provisions of Virgin Islands law set forth establish that a remand for a new trial in a criminal case is not a "final order" as is required for our jurisdiction under 28 U.S.C. S 1291.

We have, however, previously addressed this issue and resolved it in the government's favor. In Gov't of the Virgin Islands v. Charleswell, 24 F.3d 571 (3d Cir. 1994) we held that our jurisdiction over the government's appeal from an order of remand for a new trial is not predicated on 28 U.S.C. S 1291. Rather, it arises from 18 U.S.C. S 3731. See Charleswell, 24 F.3d at 574. Section 3731 provides in part: "In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts. . . ." We held that the phrase,"the United States," also applies to the government of the Virgin Islands. See Charleswell, 24 F.3d at 574, citing Gov't of the Virgin Islands v. Christensen, 673 F.2d 713, 716 (3d Cir. 1982).

We also concluded that our jurisdiction was not affected by whether the appeal was from the Appellate Division of the District Court, or the district court, itself, as "the language of 18 U.S.C. S 3731 provides no basis for holding that our jurisdiction varies depending on the capacity in which the district court sat." Charleswell , 673 F.2d at 574–

75, citing Gov't of the Virgin Islands v. Mills , 935 F.2d 591, 595-97 (3d Cir. 1991). Accordingly, we have jurisdiction, and will address the merits.

B. The Attorney General's Subpoena Power

As noted above, the Appellate Division agreed with the defendants' assertion that the Attorney General of the Virgin Islands is not authorized to subpoena evidence after a defendant has been arrested and charged, but the court did not reverse the trial court on that basis. Rather, in reversing the trial court, the Appellate Division stated: "Although the Court finds that the government did abuse its power in issuing the subpoena afer Finney's arrest, we do not reach the issue of whether Finney suffered any prejudice as a result, since we reverse on other grounds." Fonseca, 119 F. Supp. 2d at 534 (emphasis added). The discussion of the Attorney General's subpoena power is, therefore, obiter dicta. It is not part of the holding, and not precedential. Inasmuch as we are reversing the Appellate Division's holding regarding the jury instructions, we need not review the Appellate Division's conclusion regarding the limitations on the Attorney General's subpoena power.

Furthermore, Blanche did not testify at trial. Accordingly, she has waived any claim she may otherwise have had that her medical records were privileged. See Luce v. United States, 469 U.S. 38, 41 (1984) (finding harm to defendant "wholly speculative" where defendant chose not to testify to avoid impeachment from his prior convictions); United States v. Moskovits, 86 F.3d 1303, 1305 (3d Cir. 1996) (finding harm speculative where defendant, acting as his own counsel, elected not to testify to avoid conditions imposed by the trial judge on how to conduct his direct examination); United States v. Furst, 886 F.2d 558, 578 (3d Cir. 1989) (finding harm "entirely speculative" where defendant limited the scope of his direct examination of witnesses to avoid government's possible improper cross-examination of witnesses).

C. Jury Instructions

As noted above, the Appellate Division concluded that the trial court erred in not giving a lawful violence instruction.

8

The Appellate Division concluded that the defendants were entitled to that instruction under relevant provisions of 4 V.I.C. S 293(a). That statute in part defines as lawful, violence used for:

> . . .

> (3) the preservation of peace, or to prevent the commission of offenses;

> (4) in preventing or interrupting an intrusion upon the lawful possession of property, against the will of the owner or person in charge thereof;

> . . .

> (6) in self-defense or in defense of another against unlawful violence offered to his person or property.

14 V.I.C. S 293(a) (2000).2 The trial judge refused to give a specific lawful violence instruction under S 293(a), and the parties now dispute whether Blanche's attorney made a timely objection. Consequently, the parties disagree about the appropriate standard of review. The government states that we must review for plain error. The defendants argue that our review is plenary.

When a party has made a timely objection to jury instructions, we generally review for abuse of discretion. See Gov't of the Virgin Islands v. Isaac, 50 F.3d 1175, 1180 (3d Cir. 1995); Cooper Distr. Co. v. Amana Refrigeration Inc., 180 F.3d 542, 549 (3d Cir. 1999). In the absence of a timely objection, we review only for plain error. See Cooper, 180 F.3d at 549. Under the latter standard, only those errors that "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice" will be reversed. Gov't of the Virgin Islands v. Smith, 949 F.2d 677, 681 (3d

_____

2. The omitted subsections of S 293(a) are not relevant to this appeal. They address parental violence administered in disciplining children (S 293(a)(1)), violence used "for the preservation of order in a meeting for religious or other lawful purposes, in the case of obstinate resistance to the person charged with the preservation of order" (S 293(a)(2)), and violence used in making a lawful arrest pursuant to "lawful orders of a magistrate or court," (S 293(a)(5)).

Cir. 1991), quoting United States v. Young, 470 U.S. 1, 16 (1985).3

The disagreement over the appropriate standard of review stems from the circumstances surrounding the court's charge. As noted above, Moore had to go to another courtroom during part of the closing arguments and all of the jury charge. Upon his return, he asked the trial court if it had given the lawful violence instruction, and the court assured him that it had.4 The Appellate Division concluded that Moore's inquiry was sufficient to preserve an objection to the charge and afforded the jury instructions plenary review as to Blanche's appeal. However, inasmuch as Fonseca's lawyer did not object, the court reviewed his challenge to the jury instruction for "plain error." Fonseca, 119 F.Supp. 2d at 535.

We agree that Moore did not waive his objection to the jury charge. He initially requested such a charge, and thereafter clearly attempted to get clarification from the court on whether the lawful violence instruction was given during his absence. The court assured him that it had been. These attempts to preserve the issue can not be negated by the fact that his co-counsel heard the charge

_____

3. Where "the question is whether the jury instructions failed to state the proper legal standard, this court's review is plenary." Isaac, 50 F.3d at 1180.

4. The following exchange occurred:

        ATTORNEY MOORE: Your Honor, in the lawful violence, 393,
        Subsection 4, it talks about the ability of a person to use reasonable
        force to protect property or to --

        THE COURT: yes, yes yes,

        ATTORNEY MOORE: Did you give that?

        THE COURT: Yes.

        ATTORNEY MOORE: Very well, Your Honor.

App. IV, p. 1284 (Moore was apparently referring to section 293, not 393 of Title 4. See, 4 V.I.C. S 293(a)). The court no doubt did believe that it had adequately addressed that charge and (as we discuss below), we believe the charge that was given was sufficient to inform the jury about the lawful use of deadly force.

and did not object. After all, Moore was appointed precisely because his co-counsel lacked experience in criminal matters. There is an obvious unfairness in recognizing that Ms. Bornn did not have sufficient experience to adequately represent Blanche and appointing Moore as co-counsel on the one hand, and then concluding that Bornn waived an objection despite her more experienced co-counsel's efforts to preserve it on the other. However, even though we agree that the objection was not waived, we do not agree that the charge that was given was erroneous.

The Appellate Division reasoned that the evidence supported a lawful violence instruction, and concluded the trial court's failure to give one under S 293(a), was reversible error. The court stated:

> The lawful violence instruction in this instance was crucial to both appellants' defenses. With the appellants having raised the argument that their actions were committed in self-defense, the government had the burden of disproving beyond a reasonable doubt their claims of self-defense. By not including the lawful violence instruction, the trial court did not put the government to its burden before the jury and as a result, the appellants' due process rights were violated. Without question, the error had an unfair prejudicial impact that seriously affected the . . . integrity of the trial. The Court finds that the trial court's failure to give the lawful violence instruction was plain error, which inclusively indicates that the trial court's omission does not survive plenary review. Accordingly, the Court will vacate the convictions of both appellants and remand for new trial.

Fonseca, 119 F.Supp 2d at 535-6 (internal quotation marks and citations omitted).

As a general principle, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Isaac, 50 F.3d at 1180, quoting Mathews v. United States, 485 U.S. 58, 63 (1988). So long as the evidence presented at trial reveals a basis for the defense, a court may not refuse a defendant's request for an instruction on

11

that defense. See Gov't of the Virgin Islands v. Robinson, 29 F.3d 878, 882 (3d Cir. 1994); Gov't of the Virgin Islands v. Salem, 456 F.2d 674, 675 (3d Cir. 1972). Conversely, a trial court need not instruct the jury on any principle that does not have a factual basis in the evidence. See Bird v. United States, 187 U.S. 118, 132-33 (1902).

Virgin Islands law sets forth overlapping, yet distinct, defenses to a homicide prosecution. For example, any and all of the following statutes define conduct that can arguably be referred to as "lawful violence": 14 V.I.C. S 293(a) ("lawful violence"), 14 V.I.C.SS 41 and 43 ("self-defense"), 14 V.I.C. S 926 ("excusable homicide"), 14 V.I.C. SS 927(2)(A) & (B) ("justifiable homicide"). See Isaac, supra (discussing distinctions between various defenses to homicide prosecution under Virgin Islands law). The Appellate Division, however, limited its discussion to instructions on lawful violence under 14 V.I.C.S 293(a), and that is all the defendants have argued on appeal. Accordingly, we need only consider the "lawful violence" instructions that may be required under that statute. That inquiry requires that we review each of the arguably applicable subdivisions of S 293(a) in context with the evidence produced at trial. In doing so, "we consider the totality of the instructions and not a particular sentence or paragraph in isolation." United States v. Coyle, 63 F.3d 1239, 1245 (3d Cir. 1995). The instructions will be upheld if "the charge as a whole fairly and adequately submits the issues in the case to the jury." United States v. Thayer, 201 F.3d 214, 221 (3d Cir. 1999), quoting United States v. Zehrbach, 47 F.3d 1252, 1264 (3d Cir. 1995).

1. S 293(a)(3)

The government concedes that the defendants "may have been entitled to a lawful violence instruction on this record," but argues: "the only part of that instruction that was requested, was supported by the evidence, and was not covered by other instructions was [subsection (3)], and the failure to instruct on this one clause was not plain error." Appellant's Br. at 44. However, as noted above, our review is not restricted to plain error. Inasmuch as Blanche preserved the objection, we must review for abuse of

12

discretion as to her appeal, but review for plain error as to Fonseca.

Subsection 3 defines lawful violence to include violence for "the preservation of peace, or to prevent the commission of offenses," 14 V.I.C. S 293(a)(3). As noted above, the trial court indicated that it was not inclined to charge on lawful violence because the defendants were charged with homicide, not assault and battery. 14 V.I.C. S 293(a) is contained in Chapter 13 of the Virgin Islands Code. Chapter 13 is, in turn, captioned: "Assault and Battery." On the other hand, 14 V.I.C. S 927 is contained in Chapter 45 of the Virgin Islands Code which is captioned: "Homicide." 14 V.I.C. S 927 establishes the defense of "justifiable homicide," and states that such justification includes resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person"14 V.I.C. S 927(2)(A) (emphasis added).

The distinction between these two defenses is readily apparent. Section 293(a)(3) allows one to use violence to preserve the peace or prevent "commission of offenses," without further defining the offenses that justify resort to violence. However, S 927 restricts the offenses that justify resort to deadly force to felonies. Common sense, as well as the statutory scheme and headings, therefore suggest that one can only use the kind of deadly force at issue here to prevent the commission of a felony. A contrary reading would mean that someone could employ deadly force to thwart a petty theft, or even a summary offense. We do not believe that to have been the intent of the legislature in enacting S 293(a)(3).

Nevertheless, the evidence here established that one or both of the defendants assaulted Tariq with a "billy club" and possibly chemical mace before he was stabbed. Therefore, there may well have been an issue in a juror's mind about the legality of that initial assault by the defendants, and that may have been relevant to the juror's view of the defendants' subsequent right to use force against Tariq. Nevertheless, assuming arguendo that S 293(a)(3) is relevant in this context, the charge that the trial court gave adequately explained the governing legal principles and guided the jury's deliberations. The jury was

13

informed that the defendants had the right to use reasonable force to resist force being used against them. As we discuss below, the court's instructions correctly informed the jury of the circumstances in which the defendants could use deadly force, even if they were the initial aggressors.

The defense's evidence at trial raised a classic issue of self-defense. The defendants attempted to show that Tariq had a propensity for violence; that he was the aggressor throughout the confrontation; appeared to be hiding a weapon in his rear pocket; and that the defendants had a reasonable and justifiable fear of him during this altercation, and took steps to defend themselves. The trial court instructed the jury accordingly. The court stated:

> Ladies and Gentlemen of the Jury, also, if the defendant had a reasonable ground to believe and actually did believe that they were in imminent danger of death or serious bodily harm and deadly force was necessary to repel such danger, they would be justified in using deadly force in self-defense, even though it may thereafter have turned out that the appearances were false. The defense hinges on the defendants' subjective belief in imminent danger or death or serious bodily harm and the objective reasonableness of that belief.

> . . .

> You will note, too, that the defendants have raised not only the issue of self-defense, but defense of another or a third person. If a person reasonably believes that force is necessary to protect another person from what that person reasonably believes to be unlawful physical harm about to be inflicted by another and uses such force, then the person acted in self-defense of another person.

App. IV, pp. 1253-1260.

These instructions guided the jury in deciding whether Finney's and Fonseca's actions were legally justified at each step of the confrontation. The jurors knew that the defendants had a right to defend themselves against an

14

assault or aggression on the part of Tariq and, on this record, that is all that S 293(a)(3) required. 5

## 2. 14 V.I.C. S 293(a)(4)

As noted above, a lawful violence instruction is also appropriate when there is evidence that the defendant used violence in the course of "preventing or interrupting an intrusion upon the lawful possession of property. . . ." 14 V.I.C. S 293(a)(4). However, defendants never contended that Tariq attempted to enter Finney's home. The undisputed evidence, including the testimony of defendant Fonseca, is that Tariq knocked on the door, and Jesse opened it. Jesse then did retreat back into the room to call Fonseca, but Tariq remained outside, and he stayed outside in the hallway during the entire altercation. There is no evidence to suggest that Tariq tried to get inside. Accordingly, it was not an abuse of discretion to refuse to give a charge under subsection (4) of the lawful violence instruction. It was simply not supported by the testimony.

## 3. 14 V.I.C. S 293(a)(6)

There is, however, ample evidence to justify an instruction regarding the use of violence "in self-defense or in defense of another against unlawful violence offered to his person or property" under S 293(a)(6). That does not, of course, mean that the defendants were entitled to a formulation of subsection (6) of their choosing."A court errs in refusing a requested instruction only if the omitted instruction is correct, is not substantially covered by other instructions, and is so important that its omission prejudiced the defendant." United States v. Davis, 183 F.3d 231, 250 (3d Cir. 1999) (emphasis added).

In agreeing with the defendants' assertion that the trial court erred in not instructing under S 293(a), the Appellate Division failed to carefully consider the charge that the trial court actually gave. As set forth above, that charge

_____

5. To the extent that the defendants are arguing that they had a right to use deadly force to keep the peace underS 293(a)(3), we reject the argument outright.

15

accurately and adequately explained defense of self and property on this record. In their cross-appeal, the defendants argue that the self-defense charge that was given was itself erroneous because "the Court erroneously imposed a duty to retreat on the Defendants and[this] must also be corrected on retrial." Appellees' Br. at 29, n.12. However, we do not believe that the instructions imposed such a duty, and the Appellees have not cited any specific language in the charge to support that assertion. The trial court did instruct the jurors:

If the defendants had a reasonable ground to believe and actually did believe that they were in imminent danger of death or serious bodily harm, and that deadly force was necessary to repel such danger, they were not required to retreat or to consider whether they could safely retreat. They were entitled to stand their grounds and use such force as was reasonable under the circumstances to save their lives or to protect themselves from serious harm. However, if the Defendant could have safely retreated but did not do so, their failure to retreat is circumstances under which you may consider, together with all the other circumstances, in determining whether they went further in repelling the danger, real or apparent, than they were justified in doing under the circumstances.

Even if the other person was the aggressor and the defendants were justified in using force in self-defense, they would not be entitled to use any greater force than they had reasonable grounds to believe and actually did believe to have been necessary under the circumstances to save their lives or avert serious harm.

In determining whether the defendants used excessive force in defending themselves, you may consider all the circumstances under which they acted. The claim of self-defense is not necessarily defeated if greater force than would have seemed necessary in cold blood was used by the Defendants in the heat of passion generated by an assault upon them. A belief which may be unreasonable in cold blood may be actually and reasonably entertained in the heat of passion.

16

> Generally, the right to use deadly force in self-defense is not available to one who is the aggressor or provokes the conflict. However, if one who provokes a conflict thereafter withdraws from it in good faith and informs his adversaries by words or action that he desires to end the conflict, and he's thereafter pursued, he is justified in using deadly force to save himself or others from imminent danger or death or serious bodily harm.[6]

App. IV, pp. 1254-1260.

Thus, the court mentioned "retreating" only to inform the jury that it could consider the defendants' ability to safely retreat along with all of the other circumstances in deciding if the defendants' use of deadly force was reasonable under the circumstances.[7] The defendants ignore the fact that the

_____

6. The jury was therefore correctly informed of the limited circumstances in which the defendants could resort to deadly force to defend themselves even if they were the initial aggressors.

7. We do not intend to infer anything about whether Virgin Islands law imposes a duty to retreat before using deadly force. Our research has not disclosed any reported cases from the Virgin Islands discussing the duty to retreat in the context of using deadly force. In Isaac, we noted that "the Virgin Islands definition of excusable homicide restates the common law and is similar to excusable homicide statutes in Florida, California, and Mississippi." 50 F.3d at 1183. We also noted the similarity between justifiable homicide and excusable homicide in the Virgin Islands. See id. However, there is no uniform rule regarding the duty to retreat in the common law states we referred to.

The Florida Supreme Court has recognized a duty"to retreat to the wall" if one can do so safely before using deadly force unless one is in his or her own home. See Weiand v. State, 732 So. 2d 1944, 1049 (Fl. 1999) (explaining the common law origins of the"castle doctrine"). In Mississippi there is no duty to retreat so long as the one using deadly force is in a place where he or she has a right to be and was not the aggressor. "[I]n such [a] case, he may stand his ground and resist force by force, taking care that his resistance be not disportioned to the attack." Wade v. State, 724 So. 2d 1007, 1010 (Miss. App. 1998). California courts long ago rejected the common law principles underlying a duty to retreat. See People v. Zuckerman, 132 P. 2d 545, 549-0 (Cal. 1942) ("California courts have definitely rejected the antiquated doctrine that a defendant will be justified in killing his assailant in self-defense only after he has used every possible means of escape by fleeing, [including] `retreating to the wall.' ").

17

trial court specifically stated: "[the defendants] were not required to retreat or to consider whether they could safely retreat. They were entitled to stand their grounds  and use such force as was reasonable." App. IV p. 1257 (emphasis added). Accordingly, we hold that the trial court's instruction on self-defense substantially and adequately included the lawful violence specified in 14 V.I.C. S 293(a)(6), if it applies in the context of deadly force. Therefore, the trial court did not err in failing to give the "lawful violence" charge as requested.

4. The Defendants' Cross-Appeal

In granting the defendants a new trial, the Appellate Division stated:

> The issue raised by both Finney and Fonseca that requires a new trial is the inadequate instructions given to the jury by the trial court on the defenses of self-defense and justifiable homicide. Appellants argue that they were entitled to additional instructions on lawful violence, the right to use reasonable force to remove a trespasser, the powers of arrest by a private person, the right to resist, and the defense of habitation. The court arguably included the instruction on defense of habitation within its instruction on justifiable homicide. (See App. at 1254). Of the remaining allegations raised by the appellants, the court's failure to include the instruction on lawful violence causes the greatest concern.

Fonseca, 119 F. Supp 2d at 534. The defendants now ask us to address issues in their cross-appeal that they claim the Appellate Division did not resolve. However, we decline to address any additional arguments in the first instance. Rather, we will remand to the Appellate Division so that it can address any additional claims of error. See Charleswell, 24 F.3d 571, 577 (3d Cir. 1994).

III. CONCLUSION

For the reasons set forth herein, we will reverse the judgment of the Appellate Division and remand for proceedings consistent with this opinion.

18

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit