NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1069
_____

UNITED STATES OF AMERICA

v.

JEROME BROWN, A/K/A ROMEY,

Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 08-0098)
District Judge:   Honorable Gary L. Lancaster
_____

Submitted Under Third Circuit LAR 34.1(a)
October 22, 2010
_____

Before:   HARDIMAN, GREENAWAY, JR., and NYGAARD, Circuit Judges

(Opinion Filed: 11/19/2010)
_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

Appellant Jerome Brown ("Brown") appeals his judgment of conviction for

unlawful distribution of crack cocaine, in violation of 21 U.S.C. §§ 841 (a)(1) and

(b)(1)(A)(iii), by the United States District Court for the Western District of Pennsylvania. Brown contends that: (1) the evidence presented to the jury during his trial did not support its finding of guilt beyond a reasonable doubt; (2) the jury should have been provided with a transcript of Cabbagestalk's cross-examination, which it had requested, before it reached a verdict; and (3) the District Court erred in its refusal to give jury instructions regarding one of his theories of defense - - mistaken eyewitness identification. The District Court sentenced Brown to 240 months' of imprisonment on December 15, 2009.

For the following reasons, we will affirm the District Court's judgment of conviction.

## I. BACKGROUND

We write solely for the benefit of the parties. We shall recount only the essential facts.

In June of 2006, Andrea Cabbagestalk ("Cabbagestalk") approached Officer James Hensell, a member of the Allegheny County Sheriff's Office assigned to the Drug Enforcement Agency (DEA) Task Force. Cabbagestalk asked him whether she could cooperate with his office as a third-party on behalf of her husband, who was serving a nearly 20-year federal sentence for distributing crack cocaine.

Cabbagestalk and the authorities agreed that if she would identify alleged crack dealers, and then act as a confidential informant to buy crack from them, in exchange, it

2

might be possible for her husband's sentence to be reduced. Pursuant to this agreement, Cabbagestalk provided Officer Hensell with a list of alleged drug dealers, including Appellant, Jerome Brown ("Brown").

On July 17, 2006, Cabbagestalk contacted Brown via telephone, and asked to buy two ounces of crack cocaine for $1800. Brown agreed to deliver the drugs to Cabbagestalk's home.[1] Cabbagestalk's telephone conversation with Brown was recorded by Trooper Michael Warfield, a Pennsylvania State Trooper assigned to the DEA Task Force. Trooper Warfield also gave Cabbagestalk the money needed for the controlled drug purchase. Trooper Warfield equipped Cabbagestalk with an audio recorder to wear and set up a surveillance lamp camera in her living room. He then searched the immediate area where the buy would occur – the first floor of the house, including the living room and kitchen.[2] Other DEA agents established surveillance around Cabbagestalk's house later that day. These agents had also viewed a photograph of Brown and received a description of the car he would probably be driving.

Brown arrived around 6:20 p.m., backed up to Cabbagestalk's house, and walked towards the back porch. At this point, the agents lost sight of Brown. He went into the house and stayed two to two and one half minutes, then left. Officer Hensell testified that he was able to see Brown's face as he (Brown) drove away. At some point in the

---

[1]  Previous drug deals involving Cabbagestalk and Brown had taken place at Cabbagestalk's home.

[2]  Part of Brown's defense is that Cabbagestalk retrieved crack from upstairs, which was

3

conversation with Brown, Cabbagestalk went upstairs to get the money to purchase the drugs; in actuality, she was checking the functionality of the second camera.[3]

Cabbagestalk contacted Officer Hensell once the transaction was complete. At his instruction, Cabbagestalk removed the camera from upstairs, and placed it and the drugs, in a suitcase. Cabbagestalk then met Officer Hensell at a nearby restaurant and provided a written account of the transaction. After a pat-down by Officer Hensell, Cabbagestalk was released.

Based on the testimony of three witnesses, including Cabbagestalk, a grand jury in the Western District of Pennsylvania indicted Brown on one count of unlawful distribution of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii). Brown was tried by a jury on August 3 and 4, 2009. He was convicted on August 5, 2009. On December 15, 2009, the District Court sentenced Brown to 240 months of incarceration and 10 years of supervised release. Brown filed a timely notice of appeal.

## II.    JURISDICTION

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

not searched, and used it to incriminate Brown. (App. Vol. II at 95.)
[3]    Cabbagestalk and her husband had installed this camera, which was pointed towards the driveway of the house.

4

### III. STANDARD OF REVIEW

Our standard of review differs for each of Brown's claims. We exercise plenary review over Brown's insufficiency of the evidence claim. "In exercising that review, we must interpret the evidence in the light most favorable to the government as the verdict winner." United States v. Rieger, 942 F.2d 230, 232 (3d Cir. 1991) (citing Glasser v. United States, 315 U.S. 60, 80 (1942)).

We review the trial court's decision whether or not to supply the jury with copies of written transcripts for abuse of discretion, and may only reverse when abuse is found. United States v. Bertoli, 40 F.3d 1384, 1400 (3d Cir. 1994).

We review a district court's refusal to give a requested jury instruction under an abuse of discretion standard. United States v. Gross, 961 F.2d 1097, 1101 (3d Cir. 1992), cert. denied, 506 U.S. 965 (1992). However, a district court's refusal to give a jury instruction on a defendant's theory of his defense is reviewed de novo where the defendant objects to the district court's refusal to give the requested instruction. United States v. Stewart, 185 F.3d 112, 124 (3d Cir. 1999).

### III. ANALYSIS

*A. Sufficiency of the Evidence*

Brown contends that the evidence presented to the jury did not support a finding of guilt, beyond a reasonable doubt, for selling drugs. Because the conviction relied on uncorroborated testimony by a former crack addict with a criminal record, whose purpose

5

was to shorten her husband's 235 month sentence for dealing drugs, Brown posits that the judgment must be disturbed. (Appellant's Br. at 27.)

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).

For the purposes of appellate review of the sufficiency of the evidence supporting a jury verdict, we must "presume that the jury properly evaluated [the] credibility of the witnesses." United States v. Iafelice, 978 F.2d 92, 94 (3d Cir. 1992). "When deciding whether a jury verdict rests on legally sufficient evidence it is not for us to weigh the evidence or to determine the credibility of the witnesses." United States v. Smith, 294 F.3d 473, 478 (3d Cir. 2002) (citing United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998)).

Brown contends that Cabbagestalk's testimony did not prove that he sold drugs, beyond a reasonable doubt, and was thus inadequate to sustain a conviction.

Brown's assertion is meritless. The evidence adduced at trial far surpassed any threshold regarding sufficiency of the evidence. First, the Government introduced audio tapes of both the initial conversation between Cabbagestalk and Brown, setting up the drug purchase, and the body wire capturing the conversation between them during the actual drug purchase. (App. Vol. II 156-58.) Second, both Officer Hensell and Trooper Warfield testified about the activities they observed that occurred on July 17 involving Cabbagestalk and Brown. (App. Vol. II 107-10, and 129.) Third, Cabbagestalk testified that Brown was the person in her home that day and the person from whom she purchased the drugs. (App. Vol. II 186.) Last, cross-examination did not create any issue regarding the credibility of Cabbagestalk or any of the other government witnesses.

We find that there was sufficient evidence for a rational trier of fact to find all of the elements for conviction present beyond a reasonable doubt.

B.      *Providing Written Transcripts to a Jury upon Request*

Brown next contends that the jury should have been provided a transcript of Cabbagestalk's cross-examination, which they had requested, before they reached a verdict. (Appellant's Br. 33.) The District Court instructed the jury before the trial began, that "[a]t the end of the trial, you must make your decision based on what you remember from the evidence. You will not necessarily have a written transcript of the testimony to review. Thus, you must pay close attention to the testimony as it is given in trial." (App. Vol. II 69.) In addition, the District Court did allow the jury to take notes

7

if necessary, stating "[i]f you wish, you may take notes to help you remember what witnesses said . . . [N]ote taking is permitted.  It is not required."  Id.

The jury began deliberations late in the afternoon of the third day of trial, after hearing three hours of testimony from three witnesses.  The next morning, the jury asked to "see the cross-examination transcripts of Ms. Cabbagestalk."  The District Court responded: "No. A transcript is not available.  Please recall in the beginning of the trial when I instructed you, quote: At the end of the trial you must make your decision based on what you remember of the evidence.  You will not have a written transcript of the testimony to review. You must pay close attention to the testimony as it is given . . ." (App. Vol. II 283.)

Brown objected to the Court's response, contending that the transcript could have been obtained and the jury should have been told that, if it so desired, it could stay its deliberations pending production of the transcript.

Furnishing transcripts to a jury is within the district court's discretion.  United States v. Bertoli, 40 F.3d 1384, 1400 (3d Cir. 1994).  That discretion, however, is limited by two considerations: (1) whether the requests will slow the trial where the requested testimony is lengthy; and (2) when reading only a portion of the testimony, the jury may give undue weight to that portion.  Id.

Here, there was no transcript and no preparations had been made to produce a transcript.  No promise had been made that it would be available.  We have stated that

8

"we are not to be understood to be holding that a court when presented with a request for written transcripts from a jury is obliged to require their preparation if they are not otherwise available." Id. We find that the District Court did not err. No transcript needed to have been provided. There was no abuse of discretion.[4]

## C. Refusal to Give Certain Jury Instructions

Brown also alleges that the District Court erred in its refusal to give jury instructions regarding one of his theories of defense - - mistaken eyewitness identification. Brown contends that he requested an instruction on eyewitness identification; specifically, that Officer Hensell was mistaken in his identification of Brown, that the requested instruction was based on a correct statement of the law, and that the instruction was supported by the evidence. (Appellant's Br. 38.)

As a general proposition, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Virgin Islands v. Isaac, 50 F.3d 1175, 1180 (3d Cir. 1995) (quoting Matthews v. United States, 485 U.S. 58, 63 (1988)). If the evidence presented at trial indicates a basis for the defense, a court may not refuse a defendant's request for an instruction on that defense. Id. However, a trial court "need not instruct the jury on any

---

[4] The jury requested only Cabbagestalk's cross-examination testimony, not the transcript of the entire trial. We have held that providing portions of witness testimony allows for the danger of giving undue weight to particular testimony. Id. at 1401.

9

principle that does not have a factual basis in the evidence." <u>Government of the Virgin Islands v. Fonseca</u>, 274 F.3d 760, 767 (3d Cir. 2001).

Here, the District Court declined to give the requested instruction, stating that "the instructions were fine the way they were." (App. Vol. II 225.) The theory of eyewitness mistake was put before the jury on a number of occasions without any evidentiary support. Officer Hensell repeatedly stated that he saw Brown exiting the car, entering the house, exiting the house and driving away. <u>Id.</u> at 108. Officer Hensell saw Brown's face as Brown was leaving Cabbagestalk's residence. <u>Id.</u> at 109.

Although mistaken eyewitness identification was alluded to in defense counsel's summation, it was without any support in the evidence presented. There was not an iota of equivocation by Cabbagestalk or Officer Hensell.

We find that the District Court did not err in failing to give a jury instruction on the issue of mistaken eyewitness identification. There was no abuse of discretion.

## IV. CONCLUSION

As discussed above, we find that: (1) there was sufficient evidence for a rational trier of fact to find all of the elements for conviction, beyond a reasonable doubt; (2) the District Court did not abuse its discretion in declining to provide a transcript of Cabbagestalk's cross-examination at trial; and (3) the District Court did not err in declining to give a jury instruction on mistaken eyewitness identification.

10

For the foregoing reasons, we will affirm the judgment of conviction of the District Court.