# WILFRED A. BENJAMIN d/b/a BENNIE BENJAMIN SECURITY SYSTEMS, Petitioner

## v.

## MILTON C. BRANCH, Commissioner of Public Safety, Respondent

Civil No. 22-1980

District Court of the Virgin Islands

Div. of St. Thomas and St. John

July 18, 1980

Rhys S. Hodge, Esq., St. Thomas, V.I., *for petitioner*

Ive A. Swan, Esq., Attorney General of the Virgin Islands (Department of Law), St. Thomas, V.I., *for defendant*

CHRISTIAN, *Chief Judge*

## MEMORANDUM

The licensing provisions for private security guard agencies under Title 23, chapter 17 of the V.I. Code, are amenable to two opposing interpretations. Particularly is this true of § 1311(c) thereof. With all due deference to the interpretation fastened on chapter 17 of Title 23 of the Virgin Islands Code by the Virgin Islands Department of Public Safety, as the administering agency, the Court feels compelled to adopt a contrary construction. In petitioner Benjamin's view of the statute, licenses are required only for an agency's principal place of business and branch offices; that no other limitation exists on the location of the agency's actual work. In contrast, the Commissioner of Public Safety contends that the Code limits the geographical area in which an agency may perform its services to those specifically listed in the agency's license. It is because of certain relevant rules of statutory construction as well as the perceived intent of the statute that the Court believes it is petitioner who correctly construes the statute.

 The general rule applied to statutes granting powers to administrative agencies is that only those powers are granted which are conferred either expressly or by necessary implication. And where a regulatory statute lacks adequate administrative standards, it should be construed narrowly. 3 Sands, STATUTES AND STATUTORY CONSTRUCTION § 65.02 at 149–150 (4th ed. 1974). Thus, the Commissioner's power to regulate private security guard agencies should be strictly construed. The only exception to this general rule is for broad regulatory programs such as health care which are essential to the public welfare and remedial in nature. Id. § 65.03 at 163. The licensing statute at issue is clearly not of this category. Moreover, where, as with the legislation at issue, a statute is mainly intended as a regulatory measure, although as an

incidental effect it may produce revenue, the Court should be concerned principally to effectuate the regulatory objectives of the statute. Id. § 66.10 at 211. Accordingly, it is the intent of the licensing statute that should control our determination.

■ The Virgin Islands legislative history of Title 23, chapter 17 sheds no light on the purpose of the statute.[1] However, the wording of the statute and the statutory scheme is helpful in this regard. The purpose served by the licensing of detective agencies and security guard services is to ensure that these firms are owned and operated by honest and reliable individuals. The quasi-police nature of the functions of such business organizations mandates protection of the public from unqualified operators. Thus, the Commissioner may not issue a license to an applicant until he is "satisfied of the good character, competency and integrity of the applicant." See 23 V.I.C. § 1308(a). Similarly, the grounds for denial of a license listed in § 1308(b) relate primarily to evidence of an applicant's lack of good character. In addition, the requirement of a surety bond set forth in 23 V.I.C. § 1309 conditions the bond "upon the faithful and honest conduct and performance by the licensee . . . ."

■ This legislative purpose of guaranteeing the honesty and integrity of quasi-police agencies is more consistent with petitioner's interpretation of chapter 17, Title 23, than with that of the Commissioner. In effect, knowledge of an agency's principal place of business and branch offices would be sufficient for the Commissioner to fulfill his function of ensuring that any organization holding itself out as a detective or security guard agency was duly licensed and was maintaining the requisite standards. Knowledge of the particular location of individual employees as they render the services offered would not be necessary to this duty.

The Commissioner contends that the licensing requirement is intended to aid him in locating these quasi-police employees during times of emergency. This suggestion is, however, illusory because there is no support for it in the statute. Moreover, the fact that the Commissioner concedes that the law permits agencies to list on licenses an area as large as an entire island as their place of

---

[1] Chapter 17, Title 23 V.I.C. was lifted from 15 Fla. Stat. Ann. § 493.01 et seq. (West 1960). It is clear that geographic subdivisions play no role in the Florida statutory framework. That state is divided into counties. If licensure in Miami, say, limited the licensee to operation in Dade County, in which Miami falls, only, such an intention would surely have been more specifically indicated. By the same token an office in Sunny Isle does not restrict one to St. Croix.

business belies any such legislative intent. Rather, it demonstrates the fact that the Commissioner can perform his functions without keeping track of the exact location of individual employees of the agencies.

Other portions of the statutory scheme also buttress petitioner's position. Firstly, the frequency with which a security guard agency's clients might change suggests the unlikelihood that the expectation was that every change was to be reported to the Commissioner. Yet if the Commissioner's interpretation is adopted, then § 1314 would require just such reporting. Secondly, the consequences of the Commissioner's interpretation to detective agencies, which are also covered by the licensing requirement, likewise gravitates in petitioner's favor. In effect, employees of detective agencies would be expected to operate throughout the entire Virgin Islands and, therefore, it would be impossible to maintain a current listing of their precise locations. Thus, no more than the location of a detective agency's principal place of business and branch offices could ever be furnished to the Commissioner.[2] Finally, the fact that the surety bond required by § 1309(a) is $25,000 regardless of the number of an agency's employees or the locations at which such employees operate suggests that such considerations were not relevant to the statutory scheme.

■ Since it appears from the letter dated May 27, 1980, from the Commissioner of Public Safety to petitioner, as president of Bennie Benjamin Security Systems, that the application for a branch office in St. Thomas was denied on the sole ground that the agency had been unlawfully transacting business in St. Thomas, a conclusion we here reject, the Court will direct that the branch office license be issued forthwith.

---

[2] The interpretation advanced by the Commissioner does violence to the concept of a unified Government of the Virgin Islands. It was to put behind us such geographic distinctions as the Commissioner urges that we abandoned our separate municipal governments. Any return to that past status calls for a definite and unmistakable legislative expression.