# GOVERNMENT EMPLOYEES RETIREMENT SYSTEM, BOARD OF TRUSTEES, Petitioner

## v.

# GOVERNMENT OF THE VIRGIN ISLANDS OFFICE OF THE ATTORNEY GENERAL, Respondent

Case No. ST-15-MC-73

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

May 12, 2016

211

PEDRO K. WILLIAMS, ESQ., Law Offices of Pedro K. Williams, St. Thomas, USVI, *Attorney for Petitioner*.

QUINCY G. MCRAE, JR., ESQ., Virgin Islands Department of Justice, St. Thomas, USVI, *Attorney for Respondent*.

CHRISTIAN, *Judge*

## MEMORANDUM OPINION

(May 12, 2016)

██ This case is before the Court[1] on two motions filed by Respondent Government of the Virgin Islands, Office of the Attorney General (the "OAG"): 1) Motion to Dismiss and Memorandum in Support of Motion to Dismiss Petition to Quash Attorney General's Subpoena; and 2) Motion to Dismiss Petitioner's Verified Amended Complaint. Petitioner Government Employees Retirement System, Board of Trustees (the

---

[1] Although this matter was given a miscellaneous action number, it is considered to be a civil action in all pertinent respects. *In re Moorhead*, 27 V.I. 74, (V.I. Terr. Ct. 1991) (". . . in this court, miscellaneous civil numbers are assigned to all special proceedings which are non-criminal in nature, such as habeas corpus proceedings, mental health proceedings, etc., and they are in every other respect "civil actions" to which the civil rules apply.") (citations omitted). Therefore, this Court has subject matter jurisdiction to hear this case. *See* V.I. CODE ANN. tit. 4, § 76(a).

"GERS") has opposed both motions in writing. The Court disposes of each motion *seriatim*.

## I. FACTUAL AND PROCEDURAL BACKGROUND.[2]

The GERS commenced this action on October 13, 2015, by filing its Petition to Quash Attorney General's Subpoena ("Petition"). However, the Petition suffered from certain deficiencies which the Court addressed in its orders of October 16, 2015, and November 10, 2015. Pursuant to those directives, the GERS filed and served its Verified Amended Complaint on November 17, 2015.[3]

In the Verified Amended Complaint, the GERS alleges that it is an independent and autonomous instrumentality of the Government of the Virgin Islands ("Government"), and the OAG is an executive branch agency of the Government. Both parties were created by, and exist pursuant to, various provisions of Title 3 of the Virgin Islands Code. On September 28, 2015, the OAG transmitted a letter to the GERS requesting the production of specific investment transaction and account information.[4] The GERS, through its attorney, orally responded that the request would be addressed at the next Board of Trustees meeting, which was initially set for October 15, 2015, but then re-scheduled to October 22, 2015.

Notwithstanding the GERS' response, on October 9, 2015, the Chairman of the GERS Board of Trustees, Dr. Wilbur Callender, was served with an OAG Subpoena Duces Tecum ("Callender Subpoena").[5] The Callender Subpoena was personally served on him by a special agent

---

[2] The facts summarized herein are gleaned from the Verified Amended Complaint.

[3] In addition, on December 10, 2015, the Government and GERS filed the Parties' Stipulated Record of Exhibits, which lists the documents which they agree will be admitted into evidence at trial, and may also be used to determine pretrial motions. However, both parties limited the arguments in their motions and responses to the sufficiency of the pleadings, or the lack thereof. Neither party requested that the pending issues be resolved via summary judgment, and they have not briefed the issues vis-à-vis the summary judgment standard. Therefore, the Court will dispose of the Government's motions using the legal principles developed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, will limit its review to the allegations of the pleadings and any attachments thereto, and will not rely upon any of the documents submitted in the aforesaid stipulation.

[4] A copy of this OAG letter is attached to the Verified Amended Complaint as Exhibit A.

[5] A copy of this Callender Subpoena is attached to the Verified Amended Complaint as Exhibit C.

of the OAG, but no witness fee was tendered with the process. The Callender Subpoena directed the Chairman to appear before the Acting Attorney General[6] on October 15, 2015, at 5:00 p.m., at the OAG offices ". . . to give testimony in connection with a criminal investigation being conducted by the Government of the Virgin Islands." The process also directed the Chairman to bring a host of information from the GERS' portfolio with respect to securities transactions, investments, and holdings, and described the format in which the information was to be presented. This was the same information the OAG previously requested from the GERS on September 28, 2015. Notably, the Callender Subpoena states that a failure to appear and comply as directed may result in the issuance of an arrest warrant under Virgin Islands law.

On October 14, 2015, the GERS, again through counsel, wrote to the OAG reiterating that the OAG letter of September 28, 2015, was to be discussed at the upcoming Board of Trustees meeting.[7] The GERS further suggested that the subpoena process was not necessary. In this missive, the GERS asked for additional time to discuss the matter and to consult with its investment managers about the requested information. The GERS also advised the OAG of its belief that the Callender Subpoena was invalid. On October 14, 2015, the OAG issued additional subpoenas, which were similar to the Callender Subpoena, to six (6) of the GERS' investment managers ("Investment Manager Subpoenas"). All of the subpoenaed investment managers are entities outside of the U.S. Virgin Islands.

On October 15, 2015, the return date of the Callender Subpoena, the GERS' Board Chairman and its attorney went to the OAG to discuss the matter, but no one was available to meet with them. Subsequently, on October 22, 2015, the OAG wrote to the GERS Chairman, notifying him that the investment managers had been subpoenaed in an effort to secure the same information sought in the Callender Subpoena.[8] In the same communication, the OAG offered to rescind the Investment Manager

---

[6] At the time the Callender Subpoena was issued, the Honorable Claude E. Walker, Esquire, was serving as the Acting Attorney General. Since that time, Attorney Walker was confirmed by the Legislature of the Virgin Islands and sworn in as the Attorney General of the Virgin Islands.

[7] A copy of the GERS' letter is attached to the Verified Amended Complaint as Exhibit B.

[8] A copy of this OAG letter is attached to the Verified Amended Complaint as Exhibit E.

Subpoenas, on the condition that the GERS complete and return by October 26, 2015, an executed letter, in the form prepared by the OAG, which requested the same information from the GERS' investment managers. This litigation ensued.

## II. LEGAL ARGUMENT.

### a. Legal Standard Governing Pleading and a Motion to Dismiss for Failure to State a Claim.

 In both of its motions, the Government asks this Court to dismiss the GERS' pleadings for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[9] Pleading a complaint in the Superior Court is governed by the general pleading standards applied in federal district courts.[10] Under these guidelines, the plaintiff must allege facts which, if taken as true, demonstrate an entitlement to the relief sought.[11] The complainant need not plead items of proof in its allegations, but must aver more than labels and conclusions.[12] The complaint also must include a statement of the type of relief demanded.[13] A plaintiff need

---

[9] The Supreme Court of the Virgin Islands has cautioned against this tribunal's wholesale incorporation of the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure pursuant to Rule 7 of the Rules of the Superior Court. *See, e.g., Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 576-584 (V.I. 2015). Nevertheless, both the Supreme Court and the Superior Court have consistently applied the standards set forth in Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, and the judicial precedents established thereunder, to matters of pleading and motions to dismiss for failure to state a claim. *E.g., Fleming v. Cruz*, 62 V.I. 702, 709-11 (V.I. 2015); *Kiwi Constr., LLC v. Pono*, ST-2013-CV-011, 2016 V.I. LEXIS 1 at **4-6 (V.I. Super. Ct. Jan. 15, 2016). These principles strike a balance between a plaintiff's ability to seek vindication of its rights, while also preventing a defendant from being forced to litigate utterly baseless claims against it. When claims are challenged at the pleading stage, invoking the paradigm of Rules 8 and 12(b)(6), promotes the "just determination of causes coming within the jurisdiction of the court." *See* SUPER. CT. R. 1. Therefore, the Court will apply these legal principles to these motions.

[10] *See* SUPER. CT. R. 7; FED. R. CIV. P. 8(a). *See also Fleming*, 62 V.I. at 710 n. 6 ("The adequacy of a complaint is governed by the general rules of pleading set forth in Rule 8 of the Federal Rules of Civil Procedure.").

[11] *E.g., Robles v. Hovensa, LLC*, 49 V.I. 491, 499-501 (V.I. 2008) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231-34 (3d Cir. 2008)).

[12] *Id.*

[13] *See Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004-05 (9th Cir. 2009) (". . . the notice and pleading requirements of Rule 8(a) requir[e] the pleader to make a demand for judgment for the relief the pleader seeks . . .") (insertion added, internal parentheses

only present a short, plain statement of the causes of action and the basis for the claims for relief, so that the defendant is informed of what it must defend against.[14] Moreover, the plaintiff is not required to plead evidence because the Virgin Islands is a notice pleading jurisdiction.[15]

■ Under the standards promulgated by the United States Supreme Court,[16] a trial court must apply a three-part test when considering a motion to dismiss for failure to state a claim.[17] The judge must: 1) take note of the legal elements of the asserted causes of action; 2) identify and disregard naked factual contentions and legal conclusions framed as allegations of fact; and 3) review the well-pleaded facts against the necessary legal elements to determine whether the claims are plausible.[18] Plausibility is a "context-based" inquiry and driven by "judicial experience and common sense."[19] The trial court must accept the well-pleaded allegations of the plaintiff as true, and draw all reasonable inferences from those averments in favor of that party.[20] Finally, only the allegations of the complaint and any documents attached to the complaint may be considered when determining whether a pleading adequately states a claim upon which relief may be granted.[21]

---

omitted); *Warner v. Barilla*, Civil No. 3:11-CV-522, 2011 U.S. Dist. LEXIS 42312 at *9 (M.D. Pa. Mar. 23, 2011) ("At the outset, dismissal of these complaints is warranted because the complaints plainly fail to comply with Rule 8's basic injunction that 'A pleading that states a claim for relief must contain . . . a demand for the relief sought.' ").

[14] *Robles*, 49 V.I. at 500-01.

[15] *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 544 n.10 (V.I. 2015).

[16] *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

[17] *Joseph v. Bureau of Corrs.*, 54 V.I. 644, 649 (V.I. 2011).

[18] *Id.* at 649-650 (citing *Santiago v. Warminster Tp.*, 629 F.3d 121, 130-132 (3d Cir. 2010)). *See also Brady v. Cintron*, 55 V.I. 802, 823 (citations omitted).

[19] *Joseph*, 54 V.I. at 650 (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009)).

[20] *See, e.g., Pickering v. Arcos Dorados P.R., Inc.*, 2015 V.I. LEXIS 133 at **3-4 (V.I. Super. Ct. Nov. 9, 2015) (citations omitted). *See also McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (citations omitted).

[21] *E.g., Horsley v. Univ. of Ala.*, 564 F. Appx. 1006, 1008 (11th Cir. 2015) (citations omitted); *Gonzalez v. Aztex Advantage*, 547 F. Appx. 424, 426 (5th Cir. 2013) (citations omitted).

### b. The OAG's Motion to Dismiss and Memorandum in Support of Motion to Dismiss Petition to Quash Attorney General's Subpoena will be Granted.

■ The Petition filed by the GERS requests that this Court quash the Callender Subpoena and ". . . enjoin the Office of the Attorney General from taking any action based upon the unlawful subpoena." Although styled as a petition, the Court recognizing that the GERS was attempting to initiate a legal action against the OAG,[22] chose to treat the submission as a complaint[23] and required proper service of process pursuant to Rule 27(b) of the Rules of the Superior Court and Rule 4 of the Federal Rules of Civil Procedure. Notably, rather than simply set forth facts in support of a claim for relief, the GERS' Petition cited to case law, quoted statutes, and asserted legal arguments. While these items are required when a party files a motion, their placement in the body of a complaint is improper and inconsistent with the general rules of pleading.[24]

■ After the GERS properly served process, it filed an Informative Motion, unsupported by any legal authority, which caused the Court to question its previous construction of the Petition. The motion implied that the relief sought was entry of a declaratory judgment, but, apparently, in a summary fashion without any discovery or further motion practice. Alternatively, the GERS requested a hearing. At that time, it became unclear to the Court whether the GERS was pursuing a civil action for declaratory and injunctive relief, or seeking a writ of review to annul the OAG's decision to issue the Callender Subpoena.[25] Faced with this

---

[22] Civil actions in the Superior Court are initiated by the filing of a complaint. SUPER. CT. R. 22.

[23] In treating the petition as a complaint, the Court opted to place substance over form. *See Manglona v. CNMI Civil Serv. Comm'n*, 3 N. Mar. I. 243, 247 (1992) (". . . appellants urge us to reverse and remand this case. Assuming we did reverse on this ground, we anticipate the appellee would simply amend its pleading to change the word 'petition' to 'complaint.' That would be a waste of time, exalting form over substance. The pleading filed is in fact a complaint, notwithstanding that it was labeled a 'petition.' ").

[24] *See, e.g., Palmer v. Moran*, Case No. 3:12-cv-814-J-12MCR, 2013 U.S. Dist. LEXIS 81105 at **3-4 (M.D. Fla. June 10, 2013) ("In the body of the Amended Complaint, Plaintiff should neither cite to case law nor include analysis . . ."); *Choate v. United States*, 413 F. Supp. 475, 478 (N.D. Okla. 1976) (noting that a complaint which contained citations to cases and legal theories was not consistent with Rule 8 of the Federal Rules of Civil Procedure).

[25] *See* 5 V.I.C. §§ 1421-23.

pleading conundrum, the Court takes some guidance from the Supreme Court of Alabama, which noted,

> However, when the parties have not provided sufficient legal or factual justification for this Court's jurisdiction, this Court is *not* obligated to embark on its own expedition beyond the parties' arguments in pursuit of a reason to exercise jurisdiction. The burden of establishing the existence of subject-matter jurisdiction falls on the party invoking that jurisdiction.[26]

Now, the problem presented by the GERS' Petition is not strictly jurisdictional, as discussed in the above-quoted case, because the Superior Court has subject-matter jurisdiction over both regular civil actions and writs of review pursuant to Title 4, Section 76(a), Virgin Islands Code. However, the Petition places the Court in a position of procedural uncertainty. The process followed in a civil action for injunctive and declaratory relief are far different from those utilized on a writ of review. In the former type of proceeding, after being served with a complaint, a plaintiff files and serves an answer which meets Rule 8(b) of the Federal Rules of Civil Procedure, and then discovery and motion practice would ensue. Additionally, in such a case, the Superior Court sits in its trial capacity, receives evidence, and has all of the authority of a court of general jurisdiction. In the latter type of litigation, the defendant files a response which is more in the nature of a brief, and, if the Court believes the complainant's request has merit, the administrative record is gathered and a briefing schedule follows. In this setting, the Superior Court sits in its appellate capacity, does not take evidence, and has a more circumscribed decision-making role.

While the pleading requirements of Rule 8 remain favorable to plaintiffs, there are limits upon how liberally a pleading may be construed. The GERS' mixing of motion practice and pleading procedures in the Petition makes it unclear whether it is pursuing the usual civil cause of action or invoking the statutory administrative review process. Without clarity on this point, it cannot be ascertained how this case should proceed. Thus, dismissal of the Petition is appropriate. However, dismissal of the Petition should not be equated with a dismissal

---

[26] *Crutcher v. Williams*, 12 So.3d 631, 635-36 (2008) (citations omitted).

of the entire action.[27] Absent compelling circumstances, upon the dismissal of a complaint, the trial court usually should grant a plaintiff leave to amend.[28] Here, the Court directed the GERS to file an amended pleading to address the deficiencies discussed above, and, in response, it filed and served the Verified Amended Complaint. Thus, the case survives after dismissal of the Petition, and the Court will address the OAG's motion to dismiss the Verified Amended Complaint.

### c. The OAG's Motion to Dismiss Petitioner's Verified Amended Complaint will be Denied Because the GERS Alleges Plausible Claims.

The OAG contends that the Verified Amended Complaint fails to state a claim on which relief may be granted on both procedural and substantive grounds. On procedural grounds, the OAG argues that its investigative subpoena may be served by a person other than a Superior Court Marshal. It also asserts that there is no requirement that a witness fee be served with the investigative subpoena, and, even if there is, a failure to tender said fee concurrent with service of the subpoena is not fatal to the process. Substantively, the OAG argues that there is no requirement that it identify the subject of the investigation for which it issues a subpoena, that it may seek documents from the GERS' extra-territorial investment managers through this avenue, and that the GERS lacks standing to seek an order quashing the Calendar Subpoena and the Investment Manager Subpoenas.

In response, the GERS insists that it maintains a cognizable interest to bring this action because the Calendar Subpoena threatens sanctions against its Chairman for non-compliance, the OAG is invading the GERS' statutory sphere of authority, and the GERS' interests are adverse to those

---

[27] *E.g., Moya v. Schollenbarger,* 465 F.3d 444, 448-49 (10th Cir. 2006) ("A dismissal of the complaint is ordinarily a non-final, nonappealable order (since amendment would generally be available), while a dismissal of the entire action is ordinarily final.") (citations and quotation marks omitted); *Whitaker v. City of Houston,* 963 F.2d 831, 834-35 (5th Cir. 1992) (discussing whether an order dismissing all claims was a dismissal of the complaint or of the entire action).

[28] *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 236 (3d Cir. 2008) ("It does not matter whether or not a plaintiff seeks leave to amend. We have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile.") (citations omitted).

of the OAG. The GERS also argues that the OAG has no authorization to issue subpoenas of this nature outside of the U.S. Virgin Islands. Finally, the GERS believes that Virgin Islands law requires the OAG to identify the subject of any criminal investigation in the body of the investigative subpoena.

### 1. The OAG's Authority to Issue Investigatory Subpoenas is Governed by Virgin Islands Statutes and the Canons of Statutory Construction.

Virgin Islands courts have opined on the authority of the OAG to issue investigative subpoenas demanding testimony or the production of documents after a criminal action has been instituted.[29] However, no federal or local court in this jurisdiction has addressed the specific questions delineated by the parties herein.

The OAG is an executive branch administrative agency created and existing pursuant to Title 3, Chapter 8, Virgin Islands Code. As an administrative agency, when reviewing the extent of the OAG's authority, "[t]he general rule applied to statutes granting powers to administrative agencies is that only those powers are granted which are conferred either expressly or by necessary implication."[30] Although courts will enforce a duly issued administrative subpoena, when the document is challenged, courts will verify whether it comports to the governing statutory authority.[31]

It is well settled that the starting point in construing any statute is to ". . . look first to the plain meaning of its language and attempt to construe it in a way that would not 'result in injustice or absurd consequences.' "[32] If the words employed by the Legislature are clear and

---

[29] *See Fonseca v. Gov't of the V.I.*, 119 F. Supp. 2d 531 (D.V.I. App. Div. 2000), *rev'd*, 274 F.3d 760, 44 V.I. 336 (3d Cir. 2001); *People v. Willey*, ST-11-CR-631, 2012 V.I. LEXIS 76 (V.I. Super. Ct. Mar. 24, 2012); *People v. Carty*, ST-08-CR-426, 2010 V.I. LEXIS 5 (V.I. Super. Ct. Feb. 16, 2010).

[30] *Benjamin v. Branch*, 17 V.I. 557, 558 (D.V.I. 1980) (citation omitted).

[31] 1 CHARLES H. KOCH, JR., ADMINISTRATIVE LAW AND PRACTICE § 3:20[3] (2010).

[32] *Percival v. People*, 61 V.I. 187, 194 (V.I. 2014) (citations and quotation marks omitted). *See also Lopez v. People*, 60 V.I. 534, 537 (V.I. 2014) ("When construing a statute, 'we first examine the plain language of the statute under the assumption that the legislature's intent is manifest through the ordinary meaning of the words chosen.' ") (citations and quotation marks omitted).

unambiguous, then the Court applies that language as written.[33] If, however, the terms are imprecise or ambiguous, then the Court attempts to discern the intention of the Legislature through the legislative history and purpose, and uses any other appropriate canons of statutory construction.[34] The trial judge also reads all of the words used, and interprets them in the context in which they are found.[35] The Court examines each of the arguments raised by the GERS and the OAG with these legal precepts in mind.[36]

### 2. The GERS Board of Trustees has Prudential Standing to Bring this Action.

 The OAG contends that the Verified Amended Complaint should be dismissed because the GERS lacks standing to bring this action. As acknowledged by the OAG, when raised in Virgin Islands courts, the doctrine of standing encompasses prudential concerns, and is not a jurisdictional mandate.[37] Although the Supreme Court of the Virgin Islands has not adopted a definitive test, prudential standing is ". . . established upon a determination that 'the plaintiff is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.' "[38] Therefore, prudential standing, which is a judicial policy developed in the federal court system, generally

> require[s] that (1) a litigant assert his [or her] own legal interests rather than those of third parties, (2) courts refrain from adjudicating abstract

---

[33] E.g., Kalloo v. Estate of Small, 62 V.I. 571, 578 (V.I. 2015) (citations omitted); Codrington v. People, 57 V.I. 176, 185 (V.I. 2012) (citations omitted).

[34] E.g., Sonson v. People, 59 V.I. 590, 598 (V.I. 2012) (citations omitted); In re Petition of Flavius, 63 V.I. 366, 377 (V.I. Super. Ct. 2015) (When statutory language is ambiguous, ". . . the Court looks to the language of the . . . statute as a whole in search of circumstantial evidence of legislative intent.") (citations omitted).

[35] 1 V.I.C. § 42.

[36] Although this matter may be resolved by the Court's disposition of the procedural deficiencies of the Callender Subpoena as discussed below, this body has the obligation to address all issues raised by the parties in their written submissions. Mahabir v. Heirs of George, 63 V.I. 651, 667 (V.I. 2015) (citing Gardiner v Diaz, 58 V.I. 199, 205 n.5 (V.I. 2013)). Therefore, the substantive issues raised by the parties are also discussed herein.

[37] McIntosh v. People, 57 V.I. 669, 687 n.16 (V.I. 2012) (citation omitted).

[38] Ditto v. Del. Sav. Bank, No. E2006-01439-COA-R3-CV, 2007 Tenn. App. LEXIS 81 at *9 (Tenn. Ct. App. Feb. 14, 2007) (quotations in original, citation omitted).

questions of wide public significance which amount to generalized grievances, and (3) a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule, or constitutional provision on which the claim is based.[39]

Notably, prudential standing is an affirmative defense,[40] and, therefore, generally cannot form the basis for a dismissal pursuant to Rule 12(b)(6).[41] Moreover, on the merits of the arguments, the Verified Amended Complaint sets forth sufficient facts to withstand dismissal.

 Although the Callender Subpoena is directed to an individual, it is addressed to him in his capacity as the Chairman of the Board of Trustees. The documents sought are clearly those of the GERS, and not the personal information of Dr. Callender. And, by law, the GERS acts through its Board of Trustees, which has the authority to sue in the name of the GERS.[42] Thus, the Callender Subpoena is, as a practical matter, directed to the GERS, and the GERS is defending its own interests by this action. The foregoing establishes that the GERS meets the first prong for prudential standing. Further, the GERS seeks to invalidate a specific investigative subpoena issued to it, through the Chairman of its Board, and which seeks a host of its own documents. Thus, the GERS Board of Trustees is not asserting a generalized grievance. Finally, the OAG's claim that the GERS lacks prudential standing because it failed to allege any privilege or privacy interests in the documents sought, is refuted by the GERS' averment that the Callender Subpoena and the actions of the OAG invade its statutory authority set forth in Chapter 27, Title 3, Virgin

---

[39] *Freeman v. Corzine*, 629 F.3d 146, 154 (3d Cir. 2010) (insertion in original, citations omitted). *See also Niemi v. Lasshofer*, 770 F.3d 1331, 1344 (10th Cir. 2014) (citations omitted); *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007) (citations omitted).

[40] *In re Guardianship of Smith*, 54 V.I. 517, 524 n.5 (V.I. 2010) (citations omitted).

[41] *See Joseph*, 54 V.I. at 654 n.7 ("Generally, a court should refrain from dismissing a claim based on an affirmative defense until a Federal Rule of Civil Procedure 56 motion has been made, to permit adequate discovery to establish the defense." (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657 (3d Cir. 2003)).

[42] 3 V.I.C. § 715(b)(6). The statute states that the Board of Trustees may ". . . sue and be sued under the name and style of the Government Employees Retirement System of the Government of the Virgin Islands." While this is not the exact name used in the Verified Amended Complaint, the appropriate remedy, if any is required, is an amendment to the pleading and not dismissal of this action. SUPER. CT. R. 7; FED. R. CIV. P. 17(a)(3).

Islands Code.[43] Notably, all of the ". . . debts, obligations, contracts, bonds, notes, debentures, receipts, expenditures, accounts, funds, facilities, and property of the system are those of the system and not those of the Government of the Virgin Islands. . . ."[44] Additionally, the GERS has ". . . the powers and privileges of a corporation, subject, as provided herein, to the control of Board of Trustees. . . ."[45] Clearly, the GERS has the right to defend its own statutory authority, and, thus, it also meets the third prong of the prudential standing test. Hence, dismissal on this ground is not warranted.

### 3. The Callender Subpoena was not Served in Accordance with the Authorizing Statute.

██ Among its other powers and duties, the OAG has the authority ". . . to investigate violations of the laws of the Virgin Islands for which the executive branch of the Government of the Virgin Islands may invoke penalties, fines or forfeitures, or deny, suspend or revoke licenses, and to initiate and conduct appropriate proceedings in relation thereto."[46] In order to effectively perform this function, the Legislature provided the OAG with the ability to issue investigative subpoenas to persons for the purpose of obtaining testimony, documents, or other objects in the course of an investigation.

> The Attorney General or an Assistant Attorney General designated in writing . . . shall have the authority to issue subpoenas, subscribed by them for witnesses, and/or for chattels, books, papers or documents, within the Virgin Islands in the conduct of the investigation of any

---

[43] Verified Amended Complaint at ¶ 28. Therein, the GERS mistakenly referred to Title 27, instead of Title 3.

[44] 3 V.I.C. § 701(c). The OAG also argues that the records sought are public documents. However, this section plainly states that the documents of the GERS do not belong to the Government or any agency, branch, or department thereof. Thus, this argument is inaccurate at best. *Compare* 3 V.I.C. § 701(c), *with*, 3 V.I.C. § 881(a).

[45] *Id.* The exact contours of these powers and privileges may depend on whether the GERS is a private, public, or quasi-public corporation. *See* 18A AM. JUR. 2D *Corporations* §§ 29-31 (2016). Neither party briefed this matter, which entails a host of issues that are outside of the Verified Amended Complaint and its attachments. Therefore, the Court does not decide that issue herein.

[46] 3 V.I.C. § 114(a)(4).

crime, or in connection with the establishment and enforcement of child support obligations. . . .[47]

A related statute prescribes the manner of service for such subpoenas.

A subpoena may be served by the Marshal of the Superior Court, if the subpoena issues from the Office of the Attorney General, or his deputy . . . , or by any other person who is not a party and who is not less than 18 years of age. Service of a subpoena shall be made by delivering a copy thereof to the person named and by tendering to him the fee for one day's attendance and the mileage allowed by law.[48]

 The GERS alleges that the Callender Subpoena was improperly served by Kenneth Schulterbrandt, who is a Special Agent with the Department of Justice, and not a Marshal of the Superior Court. The OAG concedes that Agent Schulterbrandt is not a Marshal, but counters that he is not a party and is over 18 years of age. In the OAG's view, he may serve investigative subpoenas of the Department of Justice pursuant to the statute. Section 603 specially provides that a subpoena "may" be served by a Superior Court Marshal, or, alternatively, by any person who is 18 years of age or older and not a party to the action. Clearly, the law provides that someone other than a Superior Court Marshal may serve an OAG investigative subpoena. Therefore, the GERS's position that only a Superior Court Marshal may legally serve an OAG investigative subpoena is incorrect.

 Nevertheless, the service by Agent Schulterbrandt was not in accordance with Section 603 for two reasons. First, taking as true the allegation that he is a Special Agent for the Department of Justice, of which the Attorney General is the head,[49] Agent Schulterbrandt is a party for purposes of serving the Callender Subpoena. The Attorney General is the person who is responsible for supervising all employees of the Department of Justice,[50] which includes Agent Schulterbrandt. Moreover, he is not merely a process server in this instance. The Callender Subpoena specifically states that compliance therewith can be accomplished by

---

[47] 4 V.I.C. § 601.
[48] 4 V.I.C. § 603.
[49] 3 V.I.C. §§ 112(a), (c).
[50] 3 V.I.C. § 112(c).

turning over the documents and other information demanded to Special Agent Kenneth Schulterbrandt. Thus, Agent Schulterbrandt also is a person who is authorized and directed to collect the subpoenaed documents on behalf of the OAG. By virtue of this position and the content of the Callender Subpoena, he is a part of the investigatory process and, therefore, an interested party as contemplated by the statute. Consequently, he was not qualified to serve the Callender Subpoena under Section 603, and his service was ineffective.[51]

 Second, the claim that service of the Callender Subpoena was ineffective due to the failure of the OAG to tender the appropriate witness fee may not be dismissed under the Rule 12(b)(6) standard. Rather, the GERS' argument that the witness fee must be served with an investigative subpoena to complete service of process is supported by statute. Section 603 clearly states that any person served with an OAG subpoena issued pursuant to Section 601, must receive with a copy thereof ". . . the fee for one day's attendance and the mileage allowed by law."[52] The Verified Amended Complaint clearly alleges that no witness fee was tendered when service was purportedly made by Agent Schulterbrandt, and this averment must be taken as true. Therefore, on this ground also, the attempted service of the Callender Subpoena was ineffective. Moreover, the OAG's stance that the fee can be tendered to the witness later to cure this deficiency is not sustained by precedents discussing analogous service-of-process rules. The failure to comply with the plain language of a statute or rule requiring the contemporaneous tendering of a witness fee at the time of service of the subpoena results in ineffective service of process.[53] For all of these reasons, the OAG's request to dismiss the claims of insufficient service of the Callender Subpoena in the Verified Amended Complaint will be denied.

---

[51] *See Goodwin v. Furr*, 25 F. Supp. 2d 713, 717-718 (M.D.N.C. 1998) (deputy sheriffs were ineligible to serve process in a case where the sheriff was a named party and it was alleged that he improperly exercised the duties of his office, because, as agents of the sheriff, they were interested parties).

[52] 4 V.I.C. § 603.

[53] *See CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 713 F.2d 494 (5th Cir. 1983) (construing FED. R. CIV. P. 45); *Thykkuttathil v. Keese*, No. C12-1749 RSM, 2014 U.S. Dist. LEXIS 3362 at **3-5 (W.D. Wash. Jan. 10, 2014) (also construing FED. R. CIV. P. 45).

### 4. The Investment Manager Subpoenas Were not Properly Served.

In the Verified Amended Complaint, the GERS alleges that the OAG served investigative subpoenas on its investment managers located in California, Washington, Illinois, Georgia, and Massachusetts. The Investment Manager Subpoenas were served via first class mail, and threatened the investment managers with arrest if compliance was not forthcoming. The GERS asks this Court to declare these subpoenas invalid. The OAG argues that this claim for relief should be dismissed because the documents sought are in the Virgin Islands, and susceptible to its Section 601 subpoena powers.

However, taking the allegation that the Investment Manager Subpoenas were served via mail to be true, they are ineffective for insufficient service of process. Nothing in Title 4, Section 603, Virgin Islands Code, authorizes service of the OAG's investigative subpoenas through the United States Postal Service. Rather, personal service is required because "[s]ervice of a subpoena **shall be made** by delivering a copy thereof to the person. . . ."[54] As it appears, based on the pleadings, that there was insufficient service of the Investment Manager Subpoenas, a claim upon which relief can be granted is alleged.[55] Therefore, dismissal of this claim for relief is not appropriate.

### 5. The OAG Must Identify the Subject Matter of the Criminal Investigation in an Investigative Subpoena.

The GERS alleges that the Callender Subpoena and the Investment Manager Subpoenas fail to state the subject matter of any criminal investigation. Further, the GERS contends the statement on the Callender Subpoena that the listed documents are sought ". . . in connection with [a] criminal investigation . . ." is illusory and contrary to the Attorney General's own public statements that there is no on-going criminal

---

[54] 4 V.I.C. § 603 (emphasis added).

[55] See San Francisco Bay Area Rapid Transit Dist. v. Spencer, No. C 04-04632 SI, 2006 U.S. Dist. LEXIS 73140 at **2-3 (N.D. Cal. Sept. 25, 2006) (citations omitted) (subpoenas quashed because they were not personally served); In re Deak & Co., Inc., Nos. 1325, 1330, 1986 U.S. Dist. LEXIS 17831 at **4-10 (N.D.N.Y. Nov. 13, 1986) (noting that compliance with the personal service requirement for grand jury subpoenas is vital because of potential penalties for non-compliance).

investigation. Hence, the GERS asks this Court to declare the subpoenas invalid because they do not comply with 4 V.I.C. § 602(a).

The OAG retorts that it is not under any obligation to inform anyone that it is conducting a criminal investigation, or to provide an indication of the subject matter of an on-going investigation in its Section 601 subpoenas. In making its argument, the OAG cites to Virgin Islands and New York case precedents. The OAG also argues that the Callender Subpoena substantially conforms to 4 V.I.C. § 602(a). Upon review of the pertinent law and policies, the GERS' argument articulates the sounder legal principle.

 The GERS does not dispute that the OAG has extensive investigative powers which extend to the probing of possible infractions of any Virgin Islands laws, which, if violated, may result in the imposition of penalties, fines or forfeitures, or the denial, suspension or revocation of licenses.[56] While its investigative authority is broad, the Legislature constrained the OAG's ability to issue subpoenas outside of the judicial process to situations involving ". . . the conduct of the investigation of any crime, or in connection with the establishment and enforcement of child support obligations."[57] The Legislature further prescribed a specific form for the subpoena:

> (a) A subpoena must be substantially in the following form:
> "In the name of the Government of the Virgin Islands:
> "To: John Doe
> "You are hereby commanded to appear before Richard Roe, the Attorney General of the Virgin Islands (or the United States Attorney for the District of the Virgin Islands, as the case may be) at (naming the place), on (stating the day and hour) to give testimony in connection with the investigation by the Government of the Virgin Islands with the investigation of a charge against John Smith.
> "Dated this day of, 19.
> "Richard Roe
> "Attorney General (or United States Attorney as the case may be)."

---

[56] 3 V.I.C. § 114(a)(4).
[57] 4 V.I.C. § 601.

(b) If chattels, books, papers or documents be required, a direction to the following effect must be contained in the subpoena:

"And you are required also to bring with you the following (describing adequately the chattels, books, papers or documents required)".[58]

On its face, the Callender Subpoena meets most of the Section 602 format. It: 1) is issued to a person, Dr. Wilbur Callender, in his capacity as the Chairman of the GERS Board of Trustees; 2) contains the commanding language, and names the then-acting, and now-confirmed, Attorney General of the Virgin Islands; 3) states the place, date, and time that the appearance is required; 4) lists the documentation which must be presented at, or in lieu of, the appearance; 5) is signed by an assistant attorney general; and 6) is dated. However, the Callender Subpoena does not provide any indication of who or what is being investigated. It simply states that it seeks ". . . testimony in connection with a criminal investigation being conducted by the Government of the Virgin Islands. . . ." The parties' dispute whether this substantially conforms to the format contained in Section 602.

In support of its motion, the OAG argues that the ". . . law does not require that the Attorney General provide advance notice of its investigation[,]" and cites to *Fonseca v. Gov't of the V.I.*[59] However, in *Fonseca*, the Appellate Division of the District Court of the Virgin Islands ("Appellate Division") was faced with the question of whether an investigative subpoena of the OAG could be issued and served on a defendant in an on-going criminal proceeding, or if the prosecution was required to follow the subpoena process of Rule 17 of the Federal Rules of Criminal Procedure. The Appellate Division noted that 4 V.I.C. § 601 did not require notice to the defendant's attorney or the trial court, while Rule 17 did.[60] For that tribunal, the distinction was important because during a prosecution the defendant has a Sixth Amendment right to counsel, and, once the defendant is represented, the prosecution must communicate with the defendant through his counsel.[61] No on-going criminal prosecution is present here, which differentiates *Fonseca* from

---

[58] 4 V.I.C. § 602.

[59] 119 F. Supp. 2d 531 (D.V.I. App. Div. 2000), *rev'd*, 274 F.3d 760, 44 V.I. 336 (3d Cir. 2001).

[60] *Fonseca*, 119 F. Supp. 2d at 533-34.

[61] *Id.*

this case. Importantly, *Fonseca*, while discussing Section 601, makes no mention of Section 602 whatsoever. Finally, on appeal, the Unites States Court of Appeals for the Third Circuit ("Third Circuit") explicitly characterized the Appellate Division's statements regarding Section 601 as obiter dicta,[62] which is not precedential authority. For these reasons, *Fonseca* is inapposite to the present discussion.

The OAG also cites to *Matter of Hogan v. Cuomo*,[63] for the proposition that the OAG is not required to make a showing of fraud or other improper or illegal conduct, nor is it required to establish probable cause. However, the statute at issue in *Cuomo* expressly gave the New York Attorney General the authority to apply, on five days' notice, to the New York Supreme Court for a cease-and-desist order in connection with business fraud, and the issuance of subpoenas was conditioned upon compliance with that State's civil practice law and rules.[64] In contrast, Sections 601 through 603 do not require any application to the Superior Court for an impartial determination, do not provide for any advance notice, and do not incorporate any procedural rules. Hence, the OAG's reliance on *Cuomo* is misplaced.

 While both sides argue over whether the "criminal investigation being conducted by the Government of the Virgin Islands" language found in the Callender Subpoena is sufficient under Section 602, neither side examines what the statute means when it provides that the OAG investigative subpoena ". . . must be substantially in the following form." The Court concludes that this language, reasonably constructed, requires any investigative subpoena issued by the OAG to substantially comply with the statutory format in all pertinent aspects.[65] To determine if the Callender Subpoena substantially complies with Section 602, the Court looks to the purpose of the imposed requirements and whether the information provided in the document satisfies said purpose.[66] Effect

---

[62] *Fonseca*, 274 F.3d at 764-65, 44 V.I. at 342.

[63] 67 A.D.3d 1144, 888 N.Y.S.2d 665 (App. Div. 2009).

[64] *See* N.Y. EXEC. LAW § 63(12).

[65] *See In re Hurt*, 129 F. Supp. 94, 101 (S.D. Cal. 1955) ("Where the statute provides that the acknowledge (sic) must be substantially in the following form, substantial compliance is all that is required.") (citations omitted).

[66] *E.g., Sommervold v. Wal-Mart, Inc.*, 709 F.3d 1234, 1236 (8th Cir. 2014) (" 'Substantial compliance' with a statute means actual compliance in respect to the substance essential to

must be given to the words used to establish the requirements, but harsh or overly-technical results should be avoided.[67] Although no particular words are needed, all of the information required by the statute must be provided in order to achieve its goal.[68]

■ The Court cannot agree with the OAG's position that it is not required to provide information about the subject matter of the criminal investigation in its investigative subpoenas. First, Section 602 plainly requires that the subject matter of the investigation be set forth in the subpoena, and merely invoking the words "criminal investigation" is insufficient to meet the law. Had the Legislature not intended to require the provision of such information, the statutory form would not have included "with the investigation of a charge against John Smith." The OAG's interpretation renders this language completely superfluous — a result condemned by the canons of statutory construction.

■ The purpose of the notice requirement is to advise the witness of the topic about which he or she will be required to testify or produce documents. As a practical matter, such notice is prudent to ensure that the witness is able to address the questions posed, and makes for an organized process. In the context of a criminal investigation, such as the one potentially referred to in the Callender Subpoena, the notice requirement is of increased importance. Depending on the stage of the investigation, and the status of the witness in the investigation, various constitutional

_____

every reasonable objective of the statute. It means that a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted.") (citation omitted); *Johnson v. State*, 84 S.W.3d 658, 660 (Tex. Crim. App. 2002) ("[S]ubstantial compliance means one has performed the essential requirements of a statute. As we have held in another context, "no compliance" is not substantial compliance.") (internal quotations and citations omitted).

[67] *State v. Galvez*, 214 Ariz. 154, 150 P.3d 241, 244 (2006) ("A proper substantial-compliance test should give meaning to every part of the statute without producing unduly harsh results") (quotation marks and citation omitted); *Galik v. Clara Maass Medical Center*, 167 N.J. 341, 771 A.2d 1141, 1148 (2001) ("Its purpose is to avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose.").

[68] *Smith v. Schwarzenegger*, Case No. 1:14-cv-00060-110-SAB, 2014 U.S. Dist. LEXIS 87246 at **58-59 (E.D. Cal. June 24, 2014) ("In determining whether there has been substantial compliance, the paramount consideration is the objective of the statute.") (quotation marks and citation omitted); *Bell v. Kansas City*, 268 Kan. 208, 992 P.2d 1233, 1240 (1999) ("The notice statute at issue here requires that a claimant makes an attempt to state each element required of the notice.") (quotation marks and citations omitted).

rights may be implicated. These include First Amendment privacy rights, the Fourth Amendment right of people and their property to be free from unreasonable searches and seizures, Fifth Amendment rights to due process, to counsel, and against self-incrimination, and the Sixth Amendment right to counsel.[69] Notice of the subject matter about which the witness will be interrogated, or for which the documents are demanded, will allow the witness to determine whether any of these rights are implicated and to take any steps necessary to vindicate them. In addition, any persons or entities who may be subjected to this subpoena process are entitled to fundamental fairness.[70]

▮▮ ▮▮ This is critical under the scheme set forth in Sections 601 through 603 of Title 4, Virgin Islands Code, because the Attorney General may issue the investigative subpoenas without any notice to, or input from, an impartial tribunal, and is not guided by any statutes or rules. In our territorial criminal procedure, there is no grand jury process, which leaves the Attorney General as the sole local official with the authority to investigate allegations of criminal activity, and to determine which charges are appropriately levied.[71] Under a grand jury structure, a court is involved and there are governing rules which protect against any abuse of that process.[72] In other jurisdictions, the attorney general, while having subpoena powers, are statutorily required to follow certain procedures,

---

[69] Although, as noted in footnote 45, by statute, the GERS is invested with the powers and privileges of a corporation, the Court is not holding in this opinion that the GERS itself has these constitutional rights. Because the parties did not present argument on the extent of these powers and privileges, and since the Court is reviewing the OAG's motion through the prism of Rule 12 (b)(6) only, this determination is left for another day. However, a corporation can only act and be addressed through individual persons. Because the investigative subpoena is directed to Dr. Wilbur Callender, and he is threatened with possible sanctions for non-compliance with the subpoena, his individual rights are pertinent.

[70] See Marsland v. First Hawaiian Bank, 70 Haw. 126, 764 P.2d 1228, 1231 (1988) (noting that the statutory requirements for the content and service of attorney general subpoenas are designed to ensure fairness to the witnesses).

[71] See Brito v. People, 54 V.I. 433, 439-40 (V.I. 2010) ("A federal information differs from an indictment in that an information is a charge by a United States Attorney rather than by a grand jury. Since the prosecutor is the sole source of the charge he or she is equally free to change it, and the restrictive rules forbidding an amendment of an indictment have no application to an information.") (quoting 1 CHARLES ALAN WRIGHT AND ANDREW D. LEIPOLD, FEDERAL PRACTICE AND PROCEDURE § 129 (4th ed. 2009)).

[72] See FED. R. CRIM. P. 6.

231

invoke court proceedings, or both.[73] Because the checks set forth in other jurisdictions are absent in Sections 601 through 603, the need to ensure substantial compliance with all of the notice provisions of Section 602 is readily apparent and of heightened importance. The purpose of the notice provision is to allow a subpoenaed witness to assess whether his or her rights are being infringed upon, and provides an opportunity to petition the court for redress if necessary. Substantial compliance with the Rule 602 form is ". . .designed to prevent the inappropriate use of investigating subpoenas by government officials charged with the responsibility of investigating violations of state law."[74] These purposes are served only if the OAG is required to substantially comply with all facets of the statutory form. Here, the generic recitation of a "criminal investigation" in the Callender Subpoena does not provide the notice contemplated by Section 602.

■■■ However, the GERS' contention that the subpoena must name the person who is the subject of the charge[75] goes too far. While the Section 602 form does require the identification of the subject matter of the pertinent criminal investigation, it expressly requires substantial, not exact, compliance with its recommended form. Notably, Section 601

---

[73] For instance, as noted above, the New York statute at issue in one of the cases relied upon by the OAG specifically incorporated an application to the court and procedural statutes and rules. *See* N.Y. EXEC. LAW § 63(12). Another subsection of that same New York law which gives its attorney general broader authority to investigate ". . . matters concerning the public peace, public safety and public justice. . ." also requires that those investigatory subpoenas be issued ". . . pursuant to the civil practice law and rules." N.Y. EXEC. LAW § 63(8). Similarly, in Utah, while the state attorney general may pursue investigative subpoenas, that office is required to apply, and make certain proffers, to the state district court. *See* UTAH CODE ANN. § 77-22-2. In Pennsylvania, the statutory framework provides for the state attorney general to issue subpoenas in connection with administrative hearings, but the office must go through the courts for subpoenas in support of that office's investigations of suspected violations of state laws. *See Commonwealth ex rel. Margiotti v. Orsini*, 368 Pa. 259, 81 A.2d 891 (1951) (construing Pennsylvania's administrative laws). In Arizona, a prosecutor may issue a subpoena in furtherance of a criminal investigation only through a grand jury subpoena, or with notice to the court within a specific timeframe, and must meet other conditions, if there is no grand jury authorization. *See* ARIZ. REV. STAT. § 13-4071. In Hawaii, the attorney general's investigative subpoena must be accompanied by a statement of the witness' rights and describe the avenues for challenging the subpoena. HAW. REV. STAT. § 28-2.5(c). Hawaii's statute also specifically authorizes court proceedings to compel compliance with or quash such subpoenas. *Id.*

[74] *Marsland v. First Hawaiian Bank*, 764 P.2d at 1231.

[75] Verified Amended Complaint at ¶ 29.b.

bestows upon the OAG the authority to issue investigative subpoenas in connection with the "investigation of any crime,"[76] not any "**person.**" Similarly, as noted above, the OAG's investigatory authority extends to violations of Virgin Islands laws, and is not limited to persons who have been charged with criminal charges. While, in some instances, it may be immediately obvious that a criminal law has been violated, the identification of the perpetrator may not be so clear. The only manner by which the OAG can make this determination is through its investigatory powers, including its subpoena ability. Indeed, the OAG has an obligation to conduct such an investigation to ensure that probable cause exists prior to bringing criminal charges against a putative defendant.[77] Thus, the OAG may use its subpoenas to investigate certain transactions, incidents, or circumstances which it believes implicate criminal activity, though a specific person has not yet been associated with the matter. In such cases, an investigative subpoena should generally describe what is being scrutinized.[78] In this case, the Verified Amended Complaint, and the attachments thereto, aver that the Callender Subpoena and the Investment Manager Subpoenas do not identify either the person or the subject matter of any OAG investigation which supported their issuance. In light of the foregoing discussion, the GERS has plausibly stated a claim on which relief can be granted, and a dismissal of this portion of the pleading would be inappropriate.

## III. CONCLUSION.

Based upon a host of pleading concerns, the GERS' initial Petition will be dismissed. However, upon review of the applicable law and the

---

[76] 4 V.I.C. § 601 (emphasis added).

[77] V.I.S.CT.R. 211.3.8(a) ("The prosecutor in a criminal case shall . . . refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause.").

[78] It is impossible to specify what exact language should be employed to identify the subject matter of the pertinent investigation, given the wide-ranging scope of activities which the OAG may investigate. However, the information should be sufficient to put the prospective witness on notice of the object of the proceeding. This has been done in both federal and state investigative proceedings, and is reflected in case captions. *See, e.g., In re Grand Jury Investigation into Possible Violations of Title 18, United States Code, Sections 201, 371, 1962, 1951, 1503, 1343, and 1341*, 587 F.2d 589 (3d Cir. 1978); *In re Grand Jury Investigation of Violations of 18 U.S.C. 1621*, 318 F.2d 533 (2d Cir. 1963), *cert. denied*, 375 U.S. 802 (1963); *In re Grand Jury Investigation of Workers Comp. Fraud*, 723 N.E.2d 118 (2000); *In re Investigation of Polk Cnty. Voting Fraud & Election Law Violation*, 573 S.W.2d 466 (Tenn. 1978).

allegations of the Verified Amended Complaint, the GERS has standing to challenge the Callender Subpoena and the Investment Manager Subpoenas. Neither the Callender Subpoena nor the Investment Manager Subpoenas were properly served in accordance with Section 603, Title 4, Virgin Islands Code, and, thus, are not enforceable. Further, the Callender Subpoena and the Investment Manager Subpoenas do not provide the notice required under Section 602, Title 4, Virgin Islands Code. Therefore, the GERS states claims on which relief can be granted, and the OAG's motion to dismiss the Verified Amended Complaint will be denied in an order of even date.